[No. 37583-4-II.   Division Two.   February 3, 2010.]

MARTIN MELLISH, *Respondent*, v. FROG MOUNTAIN PET CARE ET AL., *Appellants*, JEFFERSON COUNTY, *Respondent*.

*Martin Mellish*, pro se.

*David P. Horton* (of *Law Office of David P. Horton Inc. PS*), for appellants.

*Juelie B. Dalzell, Prosecuting Attorney,* and *David W. Alvarez, Deputy,* for respondent.

¶1 QUINN-BRINTNALL, J. — This Land Use Petition Act (LUPA), ch. 36.70C RCW, appeal raises novel issues of law—whether a county hearing examiner's decision is a "final determination" under former RCW 36.70C.020(1)(a) (1995)[1] when a motion for reconsideration is pending with the county and, if not, whether the reconsideration motion tolls the time for appeal. If the decision was final before the county denied reconsideration, as Frog Mountain Pet Care argues, then Martin Mellish's appeal to the superior court was untimely and the court erred when it denied Frog Mountain's motion to dismiss. We reverse because a local government's unique reconsideration motion procedure does not toll the strict LUPA filing deadline. RCW 36.70C.040(2), (3).

## FACTS

¶2 Frog Mountain applied for a conditional use permit and minor variance in order to remodel and expand its Jefferson County (County) dog and cat boarding facility. Mellish owns property adjacent to the facility. He opposed the application because he thought the proposed expansion was too large and would increase the facility's noise, interfering with his enjoyment of his property.

¶3 On June 20, 2007, the deputy hearing examiner filed his decision granting Frog Mountain's request. The next day, the County mailed a notice of the decision to all the

---

[1] The Washington State Legislature amended RCW 36.70C.020 in 2009, recodifying the definition of "[l]and use decision" to RCW 36.70C.020(2). The legislature made no substantive changes to the definition. *Compare* RCW 36.70C.020(2), *with* former RCW 36.70C.020(1)(a).

interested parties and adjacent property owners. Mellish moved for reconsideration on June 28, but did not notify Frog Mountain of the motion.[2] The County denied the motion on July 20 and mailed a notice of decision on July 21. It issued Frog Mountain's requested permit on July 21 when it denied the motion.

¶4 On August 10, 2007, Mellish filed a land use petition at the Clallam County Superior Court challenging the County's decision. This was 20 days after the County mailed the order denying reconsideration and issued the permit, but 50 days after the County mailed the deputy hearings examiner's June 20 decision granting Frog Mountain's permit.

¶5 Frog Mountain moved, under CR 12(b)(6), to dismiss the LUPA action as untimely because Mellish did not file his petition within 21 days of the June 20 decision. Both Mellish and the County, although on opposite sides of the lawsuit, opposed the motion and argued that the LUPA statute of limitations ran from the July 20 order denying reconsideration, not the June 20 decision. The superior court agreed that the motion for reconsideration tolled the 21-day filing requirement and, accordingly, denied the motion to dismiss. The superior court then reversed the County's decision on the merits. Frog Mountain appeals only the denial of its motion to dismiss.

## ANALYSIS

### Final Determination

¶6 We first determine whether the June 20 decision was a "final decision" and, thus, a "land use decision" that must

---

[2] The Jefferson County Code (JCC) apparently does not require a party who moves for reconsideration or the County to notify the adverse party of the motion until the hearing examiner enters the decision. *See* JCC 18.40.310, .330. But due process requires notice reasonably calculated to apprise parties of the nature and character of proceedings which will affect them. *Nisqually Delta Ass'n v. City of DuPont*, 103 Wn.2d 720, 727, 696 P.2d 1222 (1985); *Duffy v. Dep't of Soc. & Health Servs.*, 90 Wn.2d 673, 678-79, 585 P.2d 470 (1978). We are concerned that the code may invite due process violations, but Frog Mountain did not appeal on this ground.

be appealed within 21 days. Former RCW 36.70C.020(1)(a). The June 20 decision was a final determination, notwithstanding the motion for reconsideration.

■■ ¶7 In reviewing an administrative decision, we stand in the same position as the superior court. *Habitat Watch v. Skagit County*, 155 Wn.2d 397, 405-06, 120 P.3d 56 (2005) (quoting *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 176, 4 P.3d 123 (2000)). We review conclusions of law de novo. *Wenatchee Sportsmen*, 141 Wn.2d at 176.

■■ ¶8 LUPA requires that a party file a petition for review within 21 days of the date a land use decision is issued.[3] RCW 36.70C.040(2), (3). This 21-day statute of limitations is strict; the doctrine of substantial compliance does not apply to it. RCW 36.70C.040(2); *Asche v. Bloomquist*, 132 Wn. App. 784, 795-96, 133 P.3d 475 (2006), *review denied*, 159 Wn.2d 1005 (2007); *Overhulse Neighborhood Ass'n v. Thurston County*, 94 Wn. App. 593, 599, 972 P.2d 470 (1999); *see also Spice v. Pierce County*, 149 Wn. App. 461, 466-67, 204 P.3d 254 (2009). LUPA defines a "land use decision" as "a *final determination* by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals" on particular types of actions, including the action at issue here. Former RCW 36.70C.020(1) (emphasis added).

¶9 The County argues that because LUPA is silent on what constitutes a "final determination," the legislature has implicitly delegated the designation of finality to the discretion of each county and, thus, in this case, we must apply the Jefferson County Code definition of a "final determination." The Clallam County Superior Court followed this approach. But the County cites no law for the

---

[3] As relevant here, a land use decision is "issued" three days after the local jurisdiction mails a written decision. RCW 36.70C.040(4)(a). In this appeal, there is no dispute that Mellish filed the land use petition within 21 days of the denial of reconsideration but more than 21 days from the original hearing examiner's decision.

proposition that each county's local definition of finality controls and our legislature and Supreme Court have indicated a contrary rule.

██ ¶10 In enacting LUPA, our legislature expressed an intention to "establish[ ] uniform, expedited appeal procedures . . . in order to provide consistent, predictable, and timely judicial review." RCW 36.70C.010. An appeal procedure that varies based on each local government's definition of "final determination" would not be "uniform." RCW 36.70C.010. Instead of deferring to local ordinances, our Supreme Court has supplied common law and dictionary definitions to explain what is a "final determination" under LUPA with uniformity across Washington State. *See, e.g.*, *Samuel's Furniture, Inc. v. Dep't of Ecology*, 147 Wn.2d 440, 452, 54 P.3d 1194, 63 P.3d 764 (2002). The County's suggested local approach would essentially give counties power to determine whether a court has jurisdiction over a land use petition. In theory, accepting the County's argument would also allow a county to delay a LUPA appeal indefinitely. We avoid absurd results that contradict both our legislature's intent and our Supreme Court's mandates. Instead, we apply the following case law to determine whether the June 20 decision at issue here was "final" under LUPA.

¶11 Our Supreme Court expressly defined "final determination" and "final decision" (terms it uses interchangeably) in the LUPA context. It held that Washington courts should apply the term "final decision" uniformly in the context of appellate jurisdiction, including a superior court's appellate jurisdiction over a LUPA case. *See Samuel's Furniture*, 147 Wn.2d at 452. In all appellate contexts, " '[a] final decision is [o]ne which leaves nothing open to further dispute and which sets at rest [the] cause of action between parties.' " *Twin Bridge Marine Park, LLC v. Dep't of Ecology*, 162 Wn.2d 825, 858, 175 P.3d 1050 (2008) (first two alterations in original) (internal quotation marks omitted) (quoting *Samuel's Furniture*, 147 Wn.2d at 452). " 'A judgment is considered final on appeal if it concludes

the action by resolving the [petitioner's] entitlement to the requested relief.'" *Samuel's Furniture*, 147 Wn.2d at 452 (quoting *Purse Seine Vessel Owners v. State*, 92 Wn. App. 381, 387, 966 P.2d 928 (1998), *review denied*, 137 Wn.2d 1030 (1999)).

¶12 Here, there is no question that the June 20, 2007 decision was a final determination *before* Mellish moved for reconsideration. First, the hearing examiner wrote the decision and he was the "local jurisdiction's . . . officer with the highest level of authority to . . . hear appeals." Former RCW 36.70C.020(1). The County incorrectly characterizes the reconsideration motion as an "appeal." But an "appeal" is "[a] proceeding undertaken to have a decision reconsidered *by a higher authority*." BLACK'S LAW DICTIONARY 112 (9th ed. 2009) (emphasis added). In this case, the same hearings examiner who issued the original decision adjudicated the reconsideration motion; he is not a higher authority than himself. Thus, a motion to reconsider is not an appeal to a higher authority and this portion of LUPA's definition of a "land use decision" is satisfied as to the June 20 decision.

¶13 Second, the June 20 decision was a final determination. It left " 'nothing open to further dispute and . . . set[ ] at rest [the] cause of action between parties' " because it conclusively resolved every issue in the petition. *Twin Bridge Marine Park*, 162 Wn.2d at 858 (quoting *Samuel's Furniture*, 147 Wn.2d at 452). There was technically a further dispute over whether the hearings examiner should reconsider the June 20 decision, but the applicant was unaware of it and the June 20 decision " 'conclude[d] the action by resolving the [petitioner's] entitlement to the requested relief.' " *Samuel's Furniture*, 147 Wn.2d at 452 (quoting *Purse Seine Vessel Owners*, 92 Wn. App. at 387). The reconsideration motion concerned whether the June 20 decision should be reconsidered, not whether the petitioner was entitled to relief.

¶14 Indeed, legislation and court rules have consistently treated reconsideration motions as motions made after an adjudicator rendered a final decision. The Jefferson County

Code (JCC), Civil Rules, and the Rules of Appellate Procedure, to name but a few, clarify that a party may move to reconsider only a final decision, as defined by those rules. JCC 18.40.310; CR 59; RAP 12.4; *see also* FED. R. CIV. P. 59(e) (reconsideration available only of final decision). We find only two Washington laws that mandate that a decision becomes nonfinal when pending reconsideration—one is the Industrial Insurance Act, Title 51 RCW, and the other is an outdated section of the Administrative Procedure Act (APA), former ch. 34.04 RCW, that the legislature revoked in 1988. Former RCW 51.52.050(1) (2004); former RCW 34.04.130(1) (1959);[4] LAWS OF 1989, ch. 175; *see also* RCW 34.05.470(3), .542(2) (current APA, ch. 34.05 RCW, requires filing within 30 days after service of the final order but tolls filing deadline when reconsideration is pending). Both acts explicitly specify that a timely[5] motion for reconsideration renders the prior decision nonfinal. LUPA contains no provision that explicitly or implicitly tolls the finality of the hearings examiner's decision. Former RCW 51.52.050(1); ch. 36.70C RCW; former RCW 34.04.130(1).

¶15 In short, the June 20 decision was final. By uniformly applying LUPA's plain text, as we must,[6] we conclude that Mellish's reconsideration motion did not render the June 20 decision nonfinal while that motion was pending with the hearings examiner.[7]

---

[4] That statute provided, in relevant part, "Where the agency's rules provide a procedure for rehearing or reconsideration, and that procedure has been invoked, the agency decision shall not be final until the agency shall have acted thereon." Former RCW 34.04.130(1).

[5] It is not clear here whether Mellish's motion for reconsideration was timely under the JCC, but the parties have never litigated this issue.

[6] *Samuel's Furniture*, 147 Wn.2d at 452.

[7] We note that the County apparently contemplated this result when it crafted its code. If the time limits set out in the JCC were followed, the hearings examiner would have timely denied or granted reconsideration several days before Mellish was required to file his LUPA petition under the 21-day filing requirement. The hearings examiner was late in issuing his reconsideration decision, but Mellish was nevertheless strictly required to file his land use petition before the statutory deadline.

STATUTORY TOLLING

¶16 A remaining question implied but not explicitly raised by this case is whether a reconsideration motion tolls the deadline to file a LUPA appeal. We hold that reconsideration does not toll the filing deadline.

¶17 Other than LUPA, every Washington law we have examined expressly provides that a reconsideration motion either renders an otherwise final decision nonfinal or tolls the deadline for filing an appeal. *See* RCW 34.05.470(3), .542(2) (APA); former RCW 51.52.050 (Industrial Insurance Act); RAP 5.2(e)(2); former RCW 34.04.130(1); *see also* FED. R. APP. P. 4(a)(4)(A)(iv) (same). LUPA contains no similar provision. Ch. 36.70C RCW.

¶18 This omission creates an odd result. "[A] practitioner who is contemplating a challenge to a judgment may be tempted to use the relatively simple and inexpensive motion for reconsideration [as an] alternative to an appeal." 2A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE RAP 2.4 author's cmt. b, at 178 (6th ed. 2004). As written now, however, LUPA requires that an aggrieved party file a land use petition within 21 days of the final decision, regardless of whether reconsideration is pending. If the local government grants reconsideration, even in part, such a land use petition would probably become moot. And it is unclear whether a petitioner has exhausted his administrative remedies, a requirement for standing under LUPA, if the local government provides a method for reconsideration that he has declined to pursue. RCW 36.70C.060; *see* II RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE §§ 15.1--15.17, at 965-1106 (4th ed. 2002).

¶19 "When statutory language is clear, we assume that the legislature 'meant exactly what it said' and apply the plain language of the statute." *Stroh Brewery Co. v. Dep't of Revenue*, 104 Wn. App. 235, 239, 15 P.3d 692 (quoting *Duke v. Boyd*, 133 Wn.2d 80, 87, 942 P.2d 351 (1997)), *review denied*, 144 Wn.2d 1002 (2001); *see also Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621,

629, 869 P.2d 1034 (1994) (if statute is unambiguous, reviewing court determines legislative intent from the statutory language alone). As noted, RCW 36.70C.040 provides that "[a] land use petition is barred, and the [superior] court may not grant review, unless the petition is timely filed with the court." RCW 36.70C.040(2). "The petition is timely if it is filed . . . within twenty-one days of the issuance of the land use decision." RCW 36.70C.040(3). Moreover, LUPA "shall be the exclusive means of judicial review of land use decisions," subject to exceptions not applicable here. RCW 36.70C.030(1). Finally, while LUPA incorporates the superior court civil rules as to procedural matters, it does so only "to the extent that the rules are consistent with [LUPA]." RCW 36.70C.030(2). Here, the plain language of the noted LUPA provisions governs.

¶20 Notably, in other contexts, where the legislature has desired to alter the effect of unambiguous statutory provisions, such as by tolling a statute of limitations, the legislature has done so expressly. For example, RCW 4.16.170 provides that "[f]or the purpose of tolling any statute of limitations an action shall be deemed commenced when the complaint is filed or summons is served whichever occurs first." LUPA contains no similar tolling provision for motions for reconsideration. Accordingly, we are required to apply LUPA's unambiguous review provisions. *Cf. Stone v. Immigration & Naturalization Serv.*, 514 U.S. 386, 115 S. Ct. 1537, 131 L. Ed. 2d 465 (1995) (despite other administrative laws to the contrary, in deportation cases, congress intended strict filing deadline that is not affected by motions to reconsider).

EQUITABLE TOLLING

¶21 We also note that the facts of this case implicate the doctrine of equitable tolling. A court may toll the statute of limitations when justice requires such tolling but must use the doctrine sparingly. *State v. Duvall*, 86 Wn. App. 871, 875, 940 P.2d 671 (1997), *review denied*, 134 Wn.2d 1012 (1998); *Finkelstein v. Sec. Props., Inc.*, 76 Wn.

App. 733, 739, 888 P.2d 161, *review denied*, 127 Wn.2d 1002 (1995). "The predicates for equitable tolling are bad faith, deception, or false assurances by the defendant and the exercise of diligence by the plaintiff." *Millay v. Cam*, 135 Wn.2d 193, 206, 955 P.2d 791 (1998) (citing *Finkelstein*, 76 Wn. App. at 739-40). The party asserting that equitable tolling should apply bears the burden of proof. *City of Bellevue v. Benyaminov*, 144 Wn. App. 755, 767, 183 P.3d 1127 (2008), *review denied*, 165 Wn.2d 1020 (2009).

¶22 Mellish did not argue below that the statute of limitations should be equitably tolled. The trial court, however, examined communications that the County made to Mellish regarding when to file his land use petition. The correspondence is inconsistent. In some communications, the County attorney suggested that Mellish was required to await the ruling on reconsideration before he filed his land use petition, while another communication stated that the deadline ran from the June 20 decision.

¶23 These facts do not mandate equitable tolling. Mellish did not demonstrate that he relied on the false explanations of the law and equitable tolling does not apply when a nonparty attorney, who did not represent the petitioner, supplied the false assurance. *See Millay*, 135 Wn.2d at 206. On the other hand, the County did become the defendant in the superior court appeal and it is possible that Mellish could prove equitable tolling. We have the authority, and perhaps a duty, to remand for a ruling on equitable principles that a case clearly invokes. *Pardee v. Jolly*, 163 Wn.2d 558, 575-76, 182 P.3d 967 (2008). But this case does not clearly invoke the doctrine of equitable tolling. From the record before us, Frog Mountain was never served with notice that Mellish had filed a motion for reconsideration and after the LUPA filing deadline passed and the County issued the permit on July 21, it had every right to proceed with its then-vested right to modify its dog kennel. It is not unfair to disallow equitable tolling in this situation. For these reasons, we do not take the extraordinary step of remanding on equitable grounds that the parties have not raised.

TIMELINESS

¶24 Mellish's petition is time barred. LUPA provides an extremely strict command regarding the filing deadline: "A land use petition is barred, and the court may not grant review, unless the petition is timely filed with the court." RCW 36.70C.040(2). Either Mellish complied with the deadline of filing his petition 21 days after the County issued the June 20 decision or his petition is barred. As the County mailed the decision on June 21 and it is deemed "issued" three days later, the 21-day time bar runs from June 24, 2007. RCW 36.70C.040(2), (4)(a). Mellish filed his land use petition on August 10. This was more than 21 days after the hearings examiner issued the final decision that informed Frog Mountain that its application for a permit to modify its kennel was approved. This petition is barred.

¶25 We are aware that this result may seem inequitable. In nearly every legal context, a timely reconsideration motion tolls the statute for appealing a matter. No case law stated the contrary in the LUPA context until we addressed the question today and, until we filed this opinion, reasonable practitioners and pro se litigants may have concluded that filing a reconsideration motion gave them more time to file a LUPA appeal. Although we are concerned for those who did not have the benefit of a reviewing court's analysis of this issue, the law is clear and the facts on record do not give rise to relief through equitable tolling. Accordingly, we must reverse the superior court's ruling in which it denied Frog Mountain's motion to dismiss the action as untimely.

ATTORNEY FEES

¶26 Respondent County requests attorney fees if it prevails. It has not prevailed and is not entitled to fees.

¶27 We reverse and remand to the trial court with directions that it dismiss this LUPA appeal with prejudice.

VAN DEREN, C.J., and PENOYAR, J., concur.

Review granted at 169 Wn.2d 1006 (2010).