[No. 84246-9.   En Banc.]
Argued March 17, 2011.     Decided July 28, 2011.

MARTIN MELLISH, *Petitioner*, v. FROG MOUNTAIN PET CARE
ET AL., *Respondents*.

*Martin Mellish*, pro se.

*Gerald B. Steel*, for petitioner.

*David P. Horton* (of *Law Office of David P. Horton PS*), for respondents Frog Mountain Pet Care, Harold Elyea, and Jane Elyea.

*Scott W. Rosekrans, Prosecuting Attorney*, and *David W. Alvarez, Deputy*, for respondent Jefferson County.

*Harold T. Hartinger*, amicus curiae.

¶1 ALEXANDER, J. — We granted Martin Mellish's petition to review a decision of the Court of Appeals in which that

court held that Mellish's land use petition was untimely. The primary issue before us is whether a motion for reconsideration Mellish filed with a county hearing examiner tolled the running of the 21-day time limit for filing his land use petition in superior court until such time as the motion for reconsideration was decided. We conclude that it did and, consequently, reverse the Court of Appeals.

## I

¶2 Harold and Jane Elyea, the owners of Frog Mountain Pet Care, applied to Jefferson County (County) for a conditional use permit and a variance to expand their dog and cat boarding facility. Martin Mellish, the owner of adjoining property, opposed the application, asserting that the proposed expansion would increase noise from the facility. On June 18, 2007, a county hearing examiner granted Frog Mountain's application. After receiving a copy of the examiner's decision, the County issued Frog Mountain a "Type III Land Use Permit" dated June 20, 2007. Clerk's Papers (CP) at 215. The following day, the County mailed notice of the hearing examiner's decision and a copy of the land use permit to interested parties and neighboring property owners, including Mellish. The permit stated that "[p]ursuant to RCW 36.70C, the applicant or any aggrieved party may appeal this final decision to Jefferson County Superior Court within twenty-one (21) calendar days of the date of issuance of this land use decision." *Id.* at 220.

¶3 On June 28, Mellish filed a motion for reconsideration with the hearing examiner. He did not, however, notify Frog Mountain that he had filed the motion.[1] The hearing examiner denied Mellish's motion on July 20, and the County mailed notice of that decision to Mellish and Frog Mountain on the day following.

¶4 On August 10, Mellish filed a land use petition in the Clallam County Superior Court pursuant to the Land Use

---

[1] The Jefferson County Code does not require a party to notify the opposing party of a motion for reconsideration. *See* JEFFERSON COUNTY CODE 18.40.310, .330.

Petition Act (LUPA), chapter 36.70C RCW. This filing occurred 20 days after the County mailed notice of the hearing examiner's decision denying his motion for reconsideration, and 50 days after entry of the hearing examiner's decision granting Frog Mountain's application. Frog Mountain then moved to dismiss the land use petition as untimely, asserting that the 21-day time limit on filing the petition ran from the date of the hearing examiner's original decision. Mellish and the County, though on opposite sides of the underlying lawsuit, opposed Frog Mountain's motion, contending that the time limit for filing the lawsuit ran from the date Mellish's motion for reconsideration was denied. The superior court agreed with Mellish and the County, and denied Frog Mountain's motion to dismiss. It then reached the merits of Mellish's land use petition and reversed the County's decision to grant the permit.

¶5 Frog Mountain appealed to the Court of Appeals, assigning error only to the denial of its motion to dismiss. The Court of Appeals reversed the trial court, holding that the hearing examiner's original decision was the "final determination" that triggered the time limit for filing a land use petition and that Mellish's motion for reconsideration did not, therefore, toll the filing deadline. Mellish moved for reconsideration, arguing that Division Two's decision conflicted with a decision of Division One of the Court of Appeals in *Skinner v. Civil Service Commission*, 146 Wn. App. 171, 188 P.3d 550 (2008), *aff'd*, 168 Wn.2d 845, 232 P.3d 558 (2010), a case cited by Division Two in its opinion. The Court of Appeals withdrew its earlier opinion and published a new opinion, omitting any reference to *Skinner*. *Mellish v. Frog Mountain Pet Care*, 154 Wn. App. 395, 225 P.3d 439 (2010). Mellish then filed a petition for review.

¶6 Before we could consider the petition for review, the legislature amended LUPA to clarify that, when a timely motion for reconsideration of a local land use decision is filed, the date of the land use decision triggering the 21-day

time limit for filing a land use petition in superior court is the date the local jurisdiction's decision on a motion for reconsideration is entered. H.B. REP. on H.B. 2740, at 3, 61st Leg., Reg. Sess. (Wash. 2010); LAWS OF 2010, ch. 59, § 1. We directed the parties to file supplemental briefs on the applicability and effect of the new legislation. After receiving their briefs, we granted review. *Mellish v. Frog Mountain Pet Care*, 169 Wn.2d 1006, 234 P.3d 1172 (2010). Attorney Harold Hartinger, who had filed an amicus brief in support of Mellish's petition for review, filed an additional amicus brief in support of Mellish's position on the merits.

## II

■ ■ ¶7 " 'In reviewing an administrative decision, an appellate court stands in the same position as the superior court.' " *Habitat Watch v. Skagit County*, 155 Wn.2d 397, 405-06, 120 P.3d 56 (2005) (quoting *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 176, 4 P.3d 123 (2000)). Conclusions of law are reviewed de novo. *Id.* at 406.

## III

¶8 As noted above, we are confronted with the question of whether Mellish's land use petition was timely. LUPA states that "[a] land use petition is barred, and the court may not grant review, unless the petition is timely filed with the court and timely served." RCW 36.70C.040(2). A petition is timely "if it is filed and served on all parties . . . within twenty-one days of the issuance of the land use decision." RCW 36.70C.040(3). A " '[l]and use decision' " is defined as "a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination." RCW 36.70C.020(2).[2] Mellish contends

---

[2] When Mellish filed his petition, the definition of "land use decision" was codified as RCW 36.70C.020(1). *See* former RCW 36.70C.020(1) (1995). In 2009, the legislature recodified the definition of "land use decision" as RCW 36.70C.020(2) in order

that his petition was timely because it was filed within 21 days of the hearing examiner's decision denying his motion for reconsideration. Thus, the question before us is whether the examiner's decision on the reconsideration motion was "a final determination."

¶9 As we have observed above, the legislature resolved this problem, at least for future cases, when it passed House Bill 2740. The definition of " '[l]and use decision' " in RCW 36.70C.020(2)(c) now includes this proviso:

> Where a local jurisdiction allows or requires a motion for reconsideration to the highest level of authority making the determination, and a timely motion for reconsideration has been filed, the land use decision occurs on the date a decision is entered on the motion for reconsideration, and not the date of the original decision for which the motion for reconsideration was filed.

Mellish contends that this provision may not be applied retroactively. Before determining whether this contention is correct, we believe it is appropriate to decide whether the Court of Appeals correctly applied the statute in its preamendment form.

A. Was the Jefferson County hearing examiner's decision to deny Mellish's reconsideration motion the "final determination" that triggered the 21-day filing deadline?

¶10 Significantly, this court has held that a timely motion for reconsideration tolls the time limit for filing an appeal in superior court. *Skinner*, 168 Wn.2d 845. In *Skinner*, we focused on a police officer's attempt to obtain judicial review of a civil service commissioner's decision affirming his discharge. The pertinent statute governing an appeal of a civil service commissioner's decision to superior

to make room for the definition of "energy overlay zone," LAWS OF 2009, ch. 419, § 1, without altering the definition of "land use decision." *Compare* former RCW 36.70C.020(1) (1995), *with* RCW 36.70C.020(2). This opinion will simply refer to RCW 36.70C.020(2).

court provided, in pertinent part, that " '[s]uch appeal shall be taken by serving the commission, within thirty days after the entry of such judgment or order, a written notice of appeal.' " *Id.* at 851 (quoting RCW 41.12.090). Although the police officer did not file his notice of appeal in the superior court within 30 days of the civil service commission's original decision, he did file it within 30 days of the commission's denial of his motion for reconsideration. Faced with these facts, the superior court dismissed the appeal as untimely. The Court of Appeals reversed that court, holding that the 30-day time limit did not begin to run until entry of the commission's order denying reconsideration. *Skinner*, 146 Wn. App. at 176. This court granted review of that decision and affirmed the Court of Appeals.

¶11 In reaching our decision, we observed that the statutory language required an appeal within 30 days of " 'such judgment or order . . . concurred in by the commission or a majority thereof.' " *Skinner*, 168 Wn.2d at 851 (alteration in original) (quoting RCW 41.12.090). We said that this language was broad enough to encompass the commission's original decision as well as its subsequent decision denying the officer's motion for reconsideration. Thus, we concluded that the plain language of the statute did not compel the conclusion that the 30-day period for filing a notice of appeal began to run after the commission's original decision. We discussed the practical problems that a contrary conclusion would entail:

> Because there is no requirement that the Commission rule on the motion for reconsideration within 30 days of its initial decision, the aggrieved party may not learn until after 30 days from the initial decision whether to appeal and/or what judgment to appeal. The natural result would be for parties to automatically file an appeal in superior court pending a decision by the Commission on a motion for reconsideration.

*Id.* at 852. Such a result, we said, "would undercut judicial efficiency" by promoting "[u]nnecessary filings in the superior court." *Id.* Finally, we observed that the Court of

Appeals had "previously held that the statutory appeal period is tolled by a motion for reconsideration where the statute is silent on the issue." *Id.* (citing *Hall v. Seattle Sch. Dist. No. 1*, 66 Wn. App. 308, 316, 831 P.2d 1128 (1992)). Thus, "[c]onsistently with *Hall* and in the interest of judicial efficiency," we held that "under RCW 41.12.090, a valid motion for reconsideration tolls the 30-day deadline for filing an appeal in superior court." *Id.* at 853.

¶12 Although the same interest in judicial efficiency would be served by extending our holding in *Skinner* to this case, *Skinner* involved a different statute. This case is governed by LUPA, the stated purpose of which is the "*timely* judicial review" of land use decisions. RCW 36.70C-.010 (emphasis added). Our past decisions interpreting LUPA strongly favor the finality of land use decisions. *See, e.g., Habitat Watch*, 155 Wn.2d 397 (party's failure to file LUPA petition within 21 days bars challenge to permit extensions even though the extensions were granted without notice or public hearings). It is important to stress, however, that the dispute here is not over whether a party may file a notice of appeal after the LUPA time limit has expired, but rather over when that time limit starts. In other words, does the clock start with a local jurisdiction's initial land use decision or with its decision on a motion for reconsideration? The answer depends on whether a local jurisdiction's decision on a reconsideration motion satisfies LUPA's definition of " '[l]and use decision,' " defined as "a final determination by a local jurisdiction's . . . highest . . . authority to make the determination." RCW 36.70C.020(2). If it does satisfy the definition of "land use decision," then we should reach the same decision we reached in *Skinner*.

¶13 As we have observed, the Court of Appeals held that the hearing examiner's original decision was the "final determination." It based its decision on this court's definition of "final determination" in *Samuel's Furniture, Inc. v. Department of Ecology*, 147 Wn.2d 440, 54 P.3d 1194, 63 P.3d 764 (2002). In *Samuel's Furniture*, we said that a decision

is "final" if it " 'leaves nothing open to further dispute and which sets at rest cause of action between parties.' " *Id.* at 452 (quoting BLACK'S LAW DICTIONARY 567 (5th ed. 1979)). Endeavoring to apply this definition, the Court of Appeals concluded that the June 20 decision by the county hearing examiner was final "because it conclusively resolved every issue in the petition." *Mellish*, 154 Wn. App. at 402.

¶14 In fact, the June 20 decision did not "set[ ] at rest cause of action between the parties." Indeed, as the Court of Appeals correctly observed, "[t]here was *technically* a further dispute over whether the hearings examiner should reconsider the June 20 decision." *Id.* (emphasis added). According to *Samuel's Furniture*, a "final decision" must "leave[ ] nothing open to further dispute." Nonetheless, the Court of Appeals rejected the argument that the reconsideration motion affected the finality of the June 20 decision on the basis that "the applicant was unaware of it and the June 20 decision ' "conclude[d] the action by resolving the [petitioner's] entitlement to the requested relief." ' " *Id.* (alterations in original) (quoting *Samuel's Furniture*, 147 Wn.2d at 452 (quoting *Purse Seine Vessel Owners Ass'n v. State*, 92 Wn. App. 381, 387, 966 P.2d 928 (1998))). The Court of Appeals also stressed that only a *final* decision is subject to a reconsideration motion, noting that "[t]he Jefferson County Code (JCC), Civil Rules, and the Rules of Appellate Procedure, to name but a few, clarify that a party may move to reconsider only a final decision, as defined by those rules." *Id.* at 402-03 (citing JCC 18.40.310; CR 59; RAP 12.4).

¶15 Although the Court of Appeals correctly observed that the June 20 decision was "a final determination *before* Mellish moved for reconsideration," *id.* at 402, the pertinent question here is whether it was still final *after* Mellish filed his motion for reconsideration. At that point, Frog Mountain's "entitlement" to the permit was once again "open to . . . dispute." *Samuel's Furniture*, 147 Wn.2d at 452. Had

the hearing examiner granted the motion, Frog Mountain would no longer have been entitled to the permit. It is fair to say, therefore, that the action was only "conclude[d]" when the hearing examiner issued a decision on the reconsideration motion on July 20. Thus, the hearing examiner's initial decision does not fit the definition of "final decision" provided in *Samuel's Furniture*.

¶16 In further support of its holding that Mellish's motion for reconsideration did not toll the 21-day time limit, the Court of Appeals stated that "LUPA contains no provision that explicitly or implicitly tolls the finality of the hearings examiner's decision." *Mellish*, 154 Wn. App. at 403. While it is correct that before House Bill 2740 was enacted, LUPA did not contain a provision that *explicitly* tolls the finality of a local jurisdiction's initial land use decision when a timely motion for reconsideration is filed, LUPA's standing provision may be said to do so *implicitly*. In that regard, RCW 36.70C.060(2)(d) provides that a petitioner lacks "[s]tanding to bring a land use petition under this chapter" unless "[t]he petitioner has exhausted his or her administrative remedies to the extent required by law." The Court of Appeals recognized that its reading would put petitioners like Mellish in a bind:

> LUPA requires that an aggrieved party file a land use petition within 21 days of the final decision, regardless of whether reconsideration is pending. If the local government grants reconsideration, even in part, such a land use petition would probably become moot. *And it is unclear whether a petitioner has exhausted his administrative remedies, a requirement for standing under LUPA, if the local government provides a method for reconsideration that he has declined to pursue.*

*Mellish*, 154 Wn. App. at 404 (emphasis added). On that point, we said this in *Samuel's Furniture*:

> Because LUPA requires a party to exhaust its administrative options before bringing a land use petition, RCW 36.70C.060, Ecology would also have been required to appeal the City's decisions pursuant to the procedures established by the City.

Because it failed to do so, it would be similarly barred from bringing a LUPA land use petition in superior court.

*Samuel's Furniture*, 147 Wn.2d at 464 n.16. If anything, the Court of Appeals underestimates the practical problems that would result from its reading of LUPA. If a petitioner such as Mellish files a land use petition without waiting for the hearing examiner's decision on the reconsideration motion, the petitioner would lack standing because he or she would not have exhausted administrative remedies yet. On the other hand, if the petitioner were to wait, the LUPA deadline might expire before the hearing examiner issues a decision. Yet under our decision in *Habitat Watch*, that fact would not matter. The doors of the superior court would be closed tight.

¶17 That is precisely what would have happened if Mellish had waited for the hearing examiner to rule on the reconsideration motion. The Court of Appeals addressed this situation, noting that

> [i]f the time limits set out in the JCC were followed, the hearings examiner would have timely denied or granted reconsideration several days before Mellish was required to file his LUPA petition under the 21-day filing requirement. The hearings examiner was late in issuing his reconsideration decision, but Mellish was nevertheless strictly required to file his land use petition before the statutory deadline.

*Mellish*, 154 Wn. App. at 403 n.7. In Mellish's case, a motion for reconsideration was optional, i.e., not "required by law" for purposes of RCW 36.70C.060(2)(d). *See* JCC 18.40.310 ("party . . . may seek reconsideration"). Thus, Mellish might have forgone his administrative remedy and simply filed a land use petition immediately. LUPA, however, clearly contemplates parties pursuing available administrative remedies. Our past decisions, moreover, have emphasized that "[l]ocal jurisdictions with expertise in land use decisions are afforded an appropriate level of deference in interpretations of law under LUPA." *Habitat Watch*, 155

Wn.2d at 412. LUPA should not be construed in such a way as to force a party into forgoing available administrative remedies when it might reasonably be interpreted otherwise.

¶18 In light of RCW 36.70C.060, it is reasonable to read LUPA as implicitly tolling the finality of a land use decision when a timely motion for reconsideration is filed. In *Habitat Watch*, we said that "once a party *has had a chance* to challenge a land use decision and *exhaust all appropriate administrative remedies*, a land use decision becomes unreviewable by the courts if not appealed to superior court within LUPA's specified timeline." *Habitat Watch*, 155 Wn.2d at 406-07 (emphasis added). Under the Court of Appeals' reading of LUPA, a petitioner has no realistic chance to exhaust administrative remedies.

¶19 Finally, the Court of Appeals stated that "[o]ther than LUPA, every Washington law we have examined expressly provides that a reconsideration motion either renders an otherwise final decision nonfinal or tolls the deadline for filing an appeal." *Mellish*, 154 Wn. App. at 404. The statutes at issue in *Hall* and *Skinner*, however, were silent as to the effect of a motion for reconsideration, and, in both cases, a motion for reconsideration was held to toll the statutory appeal period. *See Skinner*, 168 Wn.2d at 852 ("statutory appeal period is tolled by a motion for reconsideration where the statute is silent on the issue"); *Hall*, 66 Wn. App. at 316. LUPA's silence should be interpreted in the same fashion.

¶20 In sum, we believe that LUPA's definition of "land use decision" may be read to accommodate a local jurisdiction's decision on a motion for reconsideration. Indeed, " '[l]and use decision' " is defined as "*a* final determination," not "*the* final determination," of a "local jurisdiction's body or officer with the highest level of authority to make the determination." RCW 36.70C.020(2) (emphasis added). Just as the language " 'such judgment or order . . . concurred in by the commission or a majority thereof' " was held in

*Skinner*, 168 Wn.2d at 851 (alteration in original) (quoting RCW 41.12.090), to be broad enough to encompass both of the commission's decisions, "a final determination" can be applied equally to the examiner's initial permit decision and the examiner's subsequent decision on the reconsideration motion, what the superior court called the " 'second' " finality. CP at 212.

B.  Was Mellish's motion for reconsideration valid?

¶21 Frog Mountain makes two additional arguments. The first is that, even if a timely motion for reconsideration would have tolled the time limit on filing a LUPA petition before the enactment of House Bill 2740, Mellish's motion for reconsideration did not do so because it was untimely. If the motion was untimely, the hearing examiner's original decision would have been the "final determination," making it the land use decision triggering LUPA's 21-day filing deadline. Frog Mountain also claims that the lack of notice deprived it of due process.

¶22 The Court of Appeals considered these issues waived, noting that the JCC does not require a party who moves for reconsideration to notify the opposing party. *See* JCC 18.40.310. Although the court was "concerned that the code may invite due process violations," it did not rule on that issue because "Frog Mountain did not appeal on this ground." *Mellish*, 154 Wn. App. at 399 n.2. Similarly, the court observed that "[i]t is not clear here whether Mellish's motion for reconsideration was timely under the JCC, but the parties have never litigated this issue." *Id.* at 403 n.5.

¶23 Frog Mountain insists, nonetheless, that these issues are properly before this court since they "were raised, if briefly, previously," and further that "because the enactment of [House Bill] 2740 has raised new issues raised [sic] for the first time before this Court, Frog Mountain would be substantially prejudiced by such a limitation." Frog Mountain's Suppl. Br. at 6 n.30. The record shows, however, that Frog Mountain failed to challenge the timeliness of the

motion for reconsideration in superior court, focusing instead on the timeliness of the LUPA petition. *See* CP at 262-69. Thus, the superior court specifically found that the motion was timely. *Id.* at 204 ("The Plaintiff, Mr. Mellish, filed a Motion for Reconsideration of that decision within five days pursuant to Jefferson County ordinances.").[3]

¶24 Similarly, Frog Mountain waived its due process claim by failing to present it to the superior court or the Court of Appeals. Frog Mountain merely noted in its motion to dismiss that "[t]he Elyeas never received notice of this reconsideration, and only learned of it much later." *Id.* at 264 n.6.[4] In its brief in the Court of Appeals, Frog Mountain contended that "[b]ecause they did not receive notice of reconsideration they should be entitled to rely on the permit." Br. of Appellants at 8. The brief contains a few pages of argument about the timeliness of the motion but no discussion of due process. *See id.* at 8, 15-17. RAP 2.5(a)(3) allows a party to raise a claim of error for the first time on appeal if it is a manifest error affecting a constitutional right. *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). An error affecting a constitutional right is "manifest" if it caused actual prejudice. *Id.* at 927. Here, while Frog Mountain did not receive notice of the motion for reconsideration, the hearing examiner decided the motion in Frog Mountain's favor "without . . . argument by the party filing the request." JCC 18.40.310. There was no prejudice. In sum, we hold that Frog Mountain's claims

---

[3] The court evidently accepted the declaration of David Johnson, who, as assistant and associate planner for Jefferson County, was responsible for Frog Mountain's application. Johnson declared that a "Motion for Reconsideration ('MFR') [must be filed] within five (5) business days of the date the Land Use Decision is issued, a deadline satisfied by Mr. Mellish[,] who filed his MFR on June 28, 2007, precisely five business days after the decision was mailed out." CP at 215.

[4] Frog Mountain also cites CP at 268, but the discussion on that page of its motion to dismiss does not concern Frog Mountain's due process rights, but rather *Mellish's* due process rights and how, even if they were violated, LUPA's filing deadline still applies. *See* CP at 268 (citing *Asche v. Bloomquist*, 132 Wn. App. 784, 798-99, 133 P.3d 475 (2006)).

concerning the lack of notice and the timeliness of Mellish's motion for reconsideration have been waived.

## IV

¶25 For the foregoing reasons, we reverse the Court of Appeals, holding that the motion for reconsideration Mellish filed with the county hearing examiner tolled the finality of the hearing examiner's initial decision. Our resolution of this issue makes it unnecessary for us to consider whether House Bill 2740 applies retroactively.

MADSEN, C.J., and C. JOHNSON, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, STEPHENS, and WIGGINS, JJ., concur.