194 P.3d 1005 (2008)
David FAHNDRICH and Cindy Fahndrich, a marital community under the laws of the State of Washington; and Jenee Fahndrich, an individual, Appellants,
v.
Linda WILLIAMS and "John Doe" Williams, a marital community under the laws of the State of Washington; Clifford Mullins and Shelly Mullins, a marital community under the laws of the State of Washington, Respondents.
No. 36967-2-II.
Court of Appeals of Washington, Division 2.
October 28, 2008.
*1006 Michael C. Simon, Landerholm, Memovich, Lansverk & Whitesi, Vancouver, WA, for Appellants.
Bruce M. White, Attorney at Law, Todd Scott Baran, Todd S. Baran, PC, Portland, OR, Kevin Michael Sampson, Bullivant Houser Bailey PC, Vancouver, WA, Jerret E. Sale, Deborah Lynn Carstens, Matthew J. Sekits, Bullivant Houser Bailey PC, Seattle, WA, for Respondents.
ARMSTRONG, J.
¶ 1 Jenee Fahndrich was in two automobile accidents, one with Linda Williams and one approximately seven months later with Shelly Mullins. Fahndrich and her parents sued Williams and Mullins for both economic (special) and non-economic (general) damages relating to head, neck, and jaw injuries. The jury awarded only economic damages against each defendant. Fahndrich now appeals the trial court's denial of a motion for a new trial, arguing that the jury's refusal to award non-economic damages was not supported by the evidence. We agree and reverse and remand for a new trial on damages.

FACTS
¶ 2 In April 2000, Jenee Fahndrich's car collided with Linda Williams's car when Williams pulled out from a parking lot without looking. Fahndrich's head whipped back and forth and struck the headrest. The next day, she sought treatment for head, neck, and back pain from Dr. Kelly Smith, a chiropractor. When her neck pain and headaches did not resolve after five months, Dr. Smith referred her to a neurologist, Dr. J. Bruce Bell, who diagnosed her with myofascial pain syndrome resulting from the car accident. Fahndrich's primary care physician confirmed this diagnosis in October 2000.
¶ 3 In November 2000, Fahndrich was a passenger in a stopped car that Shelly Mullins rear-ended. Mullins was traveling slowly, and neither car sustained damage. The collision jolted Fahndrich's neck back and forth. The next day, her neck and back symptoms increased. She again sought treatment with Dr. Smith. Fahndrich also began reporting jaw joint pain about two to three months after the November 2000 accident. She received continuing treatment from various doctors, dentists, and physical therapists for her head, neck, and jaw pain.
¶ 4 Fahndrich sued Williams and Mullins for the injuries caused by the April 2000 and *1007 November 2000 collisions. At trial in July 2007, Fahndrich testified that since 2000, she had suffered debilitating headaches from one to five days a week, and these headaches impacted her work, career choices, and participation in social activities. Her friends and family corroborated this, testifying that they had not known Fahndrich to have headaches before the April 2000 accident but she consistently complained about headaches afterwards. During a headache, Fahndrich was unable to do strenuous physical activities, sing in her choir, or even smile without pain, and sometimes she would have to withdraw completely into a dark room and lie down.
¶ 5 Fahndrich presented the only medical testimony at trial, and the only medical dispute was the diagnosis for Fahndrich's pain. Some doctors testified that Fahndrich suffered from temporomandibular joint disorder (TMJ), a jaw disorder that has objectively verifiable symptoms. Other treatment providers could not verify a TMJ diagnosis, instead diagnosing Fahndrich with myofascial pain syndrome resulting from soft tissue damage. Neither Williams nor Mullins presented evidence to dispute Fahndrich's claim that she suffered pain, but Mullins did dispute whether her accident caused Fahndrich's TMJ problems.
¶ 6 The jury awarded Fahndrich $22,500 for her injuries from the Williams accident and $2,500 for the Mullins accident. Both of these sums were solely for special damages; the verdict form contained line items for both "Economic Damages" and "Non-Economic Damages," and for each defendant the amount for non-economic damages was zero. Clerk's Papers (CP) at 179-80.
¶ 7 Fahndrich moved for a new trial because the jury awarded only economic damages and no non-economic damages for her pain and suffering. The trial court denied the motion, and Fahndrich now appeals.

ANALYSIS
¶ 8 Fahndrich argues that the trial court should have granted her motion for a new trial because there was no evidence or reasonable inference from the evidence that she was not entitled to damages for pain and suffering.[1]
¶ 9 Determining the amount of damages is within the jury's province, and we are reluctant to interfere with a jury's damage award. Locke v. City of Seattle, 162 Wash.2d 474, 486, 172 P.3d 705 (2007) (quoting Palmer v. Jensen, 132 Wash.2d 193, 197, 937 P.2d 597 (1997)). But CR 59 allows a trial court to grant a new trial for several reasons, including "[t]hat there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or that it is contrary to law." CR 59(a)(7). We review a trial court's ruling on such a motion for abuse of discretion. Locke, 162 Wash.2d at 486, 172 P.3d 705. Where the proponent of a new trial argues that the verdict was not based on the evidence, we look to the record to determine whether sufficient evidence, viewed in the light most favorable to the nonmoving party, supports the verdict. Palmer, 132 Wash.2d at 197, 937 P.2d 597. A trial court abuses its discretion by denying a motion for a new trial where the verdict is contrary to the evidence. Palmer, 132 Wash.2d at 198, 937 P.2d 597.
¶ 10 A plaintiff who substantiates her pain and suffering with evidence is entitled to noneconomic damages. Palmer, 132 Wash.2d at 201, 937 P.2d 597. In Palmer, the plaintiff argued, as Fahndrich does here, that she was entitled to a new trial because the jury failed to award general damages. Palmer, 132 Wash.2d at 198, 937 P.2d 597. Because the verdict form did not allow the jury to find economic damages separately from non-economic damages, the court first had to determine whether the jury had in fact failed to award general damages. See Palmer, 132 Wash.2d at 198-201, 937 P.2d 597. After finding that it had, the court then considered whether the failure to award general *1008 damages was contrary to the evidence. Palmer, 132 Wash.2d at 201-03, 937 P.2d 597. The court noted that the plaintiff had been treated with pain medication and physical therapy for neck pain, low back pain, headaches, and sleep difficulties for over a year after the accident. Palmer, 132 Wash.2d at 202, 937 P.2d 597. Her treatment providers testified that the plaintiff's neck and back were "very tender" and "very uncomfortable," she had "constant low back pain that varie[d] in intensity from dull to sharp," and she had "great difficulty" sleeping. Palmer, 132 Wash.2d at 202, 937 P.2d 597. Furthermore, the defendants did not introduce any evidence disputing these damages at trial. Palmer, 132 Wash.2d at 196, 937 P.2d 597. Under these circumstances, the jury's omission of general damages was contrary to the evidence. Palmer, 132 Wash.2d at 203, 937 P.2d 597.
¶ 11 Here, the jury specifically found only economic damages, entering zero for noneconomic damages on its verdict form.[2] Thus, we address only whether the evidence supports the jury's failure to award noneconomic damages. See Lopez v. Salgado-Guadarama, 130 Wash.App. 87, 92, 122 P.3d 733 (2005).
¶ 12 As a preliminary matter, Williams argues that Fahndrich cannot make this showing because the record is incomplete. Specifically, she notes that the record does not contain (1) Linda Williams's and Shelly Mullins's testimony, (2) expert testimony by two witnesses,[3] (3) testimony by two other witnesses, (4) numerous exhibits, and (5) all evidence of Fahndrich's lost wages and impaired earning capacity. Fahndrich asserts in her reply brief that all of the omitted evidence is irrelevant because it goes only to proximate cause, not to the extent of her injuries.
¶ 13 A party seeking appellate review has the burden to provide an adequate record to review her issues; the trial court's decision must stand if this burden is not met. Stevens County v. Loon Lake Prop. Owners Ass'n, ___ Wash.App. ___, 187 P.3d 846, 849 (2008); see also RAP 9.2(b) ("If the party seeking review intends to urge that a verdict or finding of fact is not supported by the evidence, the party should include in the record all evidence relevant to the disputed verdict or finding"). Here, Fahndrich's record is not complete, but this is not fatal to her claim. Williams argues that the circumstances of the accident itself "could bear on the credibility of Fahndrich's complaints of pain and discomfort" or "presumably had something relevant to [add] about the significance of the impacts that could bear on the issues of causation and damages."[4] Br. of Resp't Williams at 11. But this argument would be persuasive only if the jury's award reflected that it found Fahndrich's injuries to be "minimal." See Palmer, 132 Wash.2d at 202, 937 P.2d 597 (affirming jury's denial of general damages where injuries were "minimal" and plaintiff required virtually no medical care). In this case, the jury's award of $25,000 in special damages eliminates this possibility.
¶ 14 Whether a jury is justified in deciding not to award non-economic damages depends on the evidence presented at trial. See Palmer, 132 Wash.2d at 201, 937 P.2d 597. For instance, in Gestson v. Scott, 116 Wash. App. 616, 621, 67 P.3d 496 (2003), the court held that the jury was entitled to deny non-economic *1009 damages relating to an emergency room visit because the plaintiff had simply "presented no evidence of pain, suffering, or inconvenience" associated with that visit. In Lopez, 130 Wash.App. at 92, 122 P.3d 733, the jury was similarly entitled to deny noneconomic damages because the defendants presented medical testimony that the plaintiff should have recovered from any injuries quickly after the accident, and there was no medical support for his complaints of pain.
¶ 15 Here, Fahndrich presented extensive evidence of her pain and suffering, and Williams and Mullins presented no evidence to contradict it. Fahndrich, as well as friends and family members, testified about the changes in Fahndrich's life as a result of the accidents. And she sought virtually continuous treatment for her pain from several treatment providers during the six years between the April 2000 accident and trial. While the medical witnesses disagreed about the diagnosis to attach to her subjective reports of neck pain and headaches, the defendants did not seriously challenge that Fahndrich had the symptoms or that the April and November 2000 accidents caused them. Moreover, as we have discussed above, the jury award of $25,000 in special damages eliminates the possibility that it found Fahndrich's injuries "minimal" and, therefore, not warranting an award for general damages.
¶ 16 As in Palmer, Fahndrich is entitled to a new trial because "the jury found that the accident caused injuries but believed the plaintiff suffered no pain." Ma'ele v. Arrington, 111 Wash.App. 557, 562, 45 P.3d 557 (2002). The evidence does not support the conclusion that Fahndrich suffered no pain or disability as a result of her collisions with Williams and Mullins. Thus, the trial court abused its discretion in denying her a new trial.
¶ 17 We reverse and remand for a new trial on damages.
We concur: HOUGHTON, P.J., and BRIDGEWATER, J.
NOTES
[1] Williams and Mullins argue that Fahndrich waived her right to a new trial because she failed to object to the jury verdict before the trial court dismissed the jury. This argument is without merit because CR 59 explicitly allows parties to request a new trial within 10 days of the entry of judgment, regardless of when the jury was dismissed. CR 59(b). Fahndrich filed her motion within this period, so she did not waive her right for it to be heard.
[2] Where the verdict is not so delineated, courts can infer the omission of general damages only by assessing the level of controversy around the amount of special damages. See Palmer, 132 Wash.2d at 200, 937 P.2d 597 ("the court can assume the jury failed to award damages for pain and suffering where the verdict is equal to or less than uncontroverted special damages"); Cox v. Charles Wright Acad., Inc., 70 Wash.2d 173, 177, 422 P.2d 515 (1967); see also Singleton v. Jimmerson, 12 Wash.App. 203, 205, 529 P.2d 17 (1974) ("where [1] the jury verdict approximates the amount of undisputed special damages and [2] the injury and its cause is clear, the court has little hesitancy in granting a new trial"). If the special damages are disputed, courts cannot fairly make this inference. Cox, 70 Wash.2d at 179, 422 P.2d 515; Lipshay v. Barr, 54 Wash.2d 257, 258, 339 P.2d 471 (1959).
[3] In her reply brief, Fahndrich implies that the two expert witnesses were engineers.
[4] In a like vein, Mullins challenged Fahndrich's TMJ claim, eliciting testimony from several medical specialists that Fahndrich had given inconsistent histories as to the onset of her jaw pain and that generally, TMJ symptoms caused by trauma will appear within days, not months of the trauma.