FILED
COURT OF APPEALS
DIVISION II

2014 NOV 18 AM 10: 04

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Marriage of | No. 43900-0-II |
| SAMANTHA J. BADKIN, | |
| Respondent, | |
| and | |
| VINCENT L. BADKIN, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, C.J. — Vincent Badkin appeals from (1) a temporary parenting plan, an accompanying temporary child support order, which includes back child support, a motion to modify those orders, and final dissolution orders, (2) sanction orders, (3) an order denying his two CR 60(b) motions to vacate, (4) the trial court's failure to disqualify Samantha Badkin's attorney, (5) the trial court judge's decision to preside over the trial, and (6) the trial court's order to permit Samantha[1] to amend the dissolution petition.

---

[1] We use the parties' first names for clarity.

No. 43900-0-II

We hold that (1) because temporary orders are not appealable, we do not reach the merits of Vincent's arguments regarding or relating to the temporary orders and the motion to modify those orders, (2) because the commissioner's original sanctions order did not become a final order of the superior court, we do not reach the merits of the original sanctions order but we remand for a ruling on the revision motion and vacate the additional sanctions orders, (3) because Vincent received adequate notice of the May 7 trial, the court did not abuse its discretion when it denied his CR 60(b) motions and entered findings of fact and conclusions of law pursuant to CR 52(c), (4) because Vincent's CR 60(b) motions do not apply to the May 7 dissolution decree and child support order and the trial court properly denied his amended CR 60(b) motion to set aside the June 15 qualified domestic relations orders (QDROs), the court did not abuse its discretion, (5) because the Badkins' child is now an adult, the specific residential provisions of the parenting plan are moot, and the trial court did not abuse its discretion when it designated Samantha as the primary residential parent and ordered Vincent to pay child support because substantial evidence in the record supports these determinations, and (6) because the trial court properly permitted Samantha to amend the dissolution petition, it did not manifestly abuse its discretion.

Finally, we decline to review the attorney conflict of interest issue, Vincent's objections to the August 3 findings of fact and conclusions of law, and the propriety of the trial court's decision to preside over the May 7 trial because they are raised for the first time on appeal. Accordingly, we affirm the trial court's final dissolution rulings, vacate its order for additional sanctions, and remand for a ruling on Vincent's revision motion.

2

FACTS

## I. PRETRIAL, TEMPORARY ORDERS, AND RELATED MOTIONS

In 2010, Vincent and Samantha filed a petition for dissolution of their marriage. Their only child is now an adult. Although they initially filed a joint petition, eventually Vincent revoked his joinder and conflict ensued.

As part of a temporary order enjoining the parties from selling or disposing of property, a court commissioner ordered Vincent to pay $75 to Samantha "in temporary attorney fees" by May 31, 2011. In a separate sanctions order, the commissioner also ordered Vincent's attorney to pay $100 for failing to timely file Vincent's financial disclosure. Vincent filed a motion for revision of the commissioner's sanctions, but the superior court did not enter an order ruling on the motion. A different superior court judge later imposed an additional sanction of $100 against Vincent in new attorney fees and $100 against his attorney for failing to pay the original amounts.

In May 2011, the trial court issued a temporary parenting plan and in June, it issued an accompanying child support order. The parenting plan provided that Samantha would be designated as the primary custodial parent, although the child would alternate her residence weekly.

In January 2012, Vincent moved to end his child support obligation, modify his back child support, and for primary residential custody of their child. On February 10, the court denied Vincent's motion to modify the parenting plan and child support. Vincent appeals from these orders.

In February, after Samantha filed an affidavit of prejudice, the trial was reassigned to Judge Haberly instead of Judge Dalton. In February, two months before trial, over Vincent's objection, the court granted Samantha's motion to amend the dissolution petition.

On April 18, the original April 23 trial date was cancelled. The parties were asked to appear to set a new trial date. When they appeared, the court offered to start trial that day, but Vincent's attorney requested a continuance. The court granted the continuance and placed the case on the court's standby calendar. Kitsap County Local Civil Rules (KCLCR) provide that parties whose case is on the standby calendar should receive a minimum of two hours' notice for trial. KCLCR 40(b)(4).

On May 1, Vincent's attorney filed a notice of unavailability for most of May. On May 2, the judge's scheduler notified the parties by e-mail of a new May 7 trial date. According to Vincent's attorney, this e-mail notification was automatically sorted into his e-mail account's "saved" folder and he did not realize that he had received it until after the trial. Samantha's attorney also e-mailed Vincent's attorney on May 2 to clarify his intentions regarding the May 7 trial date and to see if Vincent's attorney needed a continuance. Neither Vincent nor his attorney appeared at trial.

## II. TRIALS AND POSTTRIAL MOTIONS

Judge Laurie proceeded with the trial on May 7, and the court entered a dissolution decree, order of child support, and findings of fact and conclusions of law.

On May 25, Vincent filed a CR 60(b) motion to set aside the three orders entered on May 7, based primarily on his attorney's declaration. On June 15, the court entered two QDROs assigning half of Vincent's 401(k) and pension plans to Samantha. Vincent filed an amended CR

4

60(b) motion to include the QDRO orders, and he amended his argument, claiming that under *In re Marriage of Daley*, 77 Wn. App. 29, 888 P.2d 1194 (1994), and *Tacoma Recycling, Inc. v. Capitol Material Handling Co.*, 34 Wn. App. 392, 661 P.2d 609 (1983), he was at least entitled to notice of presentation if default orders were entered against him based on the May 7 trial. In the amended CR 60(b) motion, Vincent also asked that a new trial be set in front of a different judge. On June 27, the trial court granted his motion in part and vacated the dissolution decree and child support order. The trial court did not vacate the findings of fact and conclusions of law. The court ordered Samantha to note a presentation hearing for her proposed dissolution decree and child support order and offered Vincent the opportunity to respond to those proposed orders based on the trial court's May 7 findings of fact and conclusions of law. In response, Vincent objected to these proposed final orders and argued that the orders are not supported by the May 7 findings of fact.

On August 3, a final dissolution decree was entered addressing the marriage dissolution, back child support, and property issues, along with amended findings of fact and conclusions of law. The final dissolution decree awarded Samantha past due child support, half of the community property portions of Vincent's pension and 401(k) plans, and it required Vincent to pay half of an Internal Revenue Service (IRS) debt.

In September, there was a parenting plan and child support trial.[2] In October, the court entered its parenting plan and child support final orders as well as related findings of fact and conclusions of law.

---

[2] Their child's testimony is not in the record on appeal, but the trial court did interview her.

## ANALYSIS

### I. THE TEMPORARY ORDERS

Vincent argues that the trial court erred when it (1) entered a temporary parenting plan, child support order, and a back child support order, and (2) denied Vincent's motion to modify the temporary parenting plan and child support orders. Because temporary orders are not final judgments under RAP 2.2(a)(1), they are not appealable.

A party may appeal from "[t]he final judgment entered in any action or proceeding." RAP 2.2(a)(1). A final judgment is "a judgment that ends the litigation, leaving nothing for the court to do but execute the judgment." *Anderson & Middleton Lumber Co. v. Quinault Indian Nation*, 79 Wn. App. 221, 225, 901 P.2d 1060 (1995) (citing *Catlin v. United States*, 324 U.S. 229, 233, 65 S. Ct. 631, 89 L. Ed. 911 (1945)), *aff'd*, 130 Wn.2d 862, 929 P.2d 379 (1996).

Here, a temporary parenting plan was filed on May 27, 2011, a temporary child support order was filed on June 3, 2011, and a temporary order for back child support was filed on August 26, 2011. Each of these temporary orders was subject to modification and revision throughout the process of the Badkins' dissolution. The trial court entered final, appealable orders and judgments—the dissolution decree, the final parenting plan, and the final order of child support— after two separate trials.[3] Thus, we hold that these temporary orders are not final orders subject to appellate review.

Likewise, the court's order denying Vincent's motion to modify the temporary orders is not appealable because it did not end the litigation. *Anderson & Middleton Lumber Co.*, 79 Wn.

---

[3] Vincent himself filed at least four motions seeking to modify these orders prior to trial, including a motion for residential credit, a motion for reconsideration, and a motion for revision.

App. at 225. There was a trial on the parenting plan and on the issue of child support where Vincent had the opportunity to present evidence and, on the basis of that trial, final orders were presented and entered on October 12. The order denying the motion to modify is, thus, also not appealable.

## II. THE MAY 7 TRIAL

### A. NOTICE FOR TRIAL

Vincent argues that he did not have proper notice of the May 7 trial date, that he was deprived of the opportunity to present evidence, and that the May 7 findings of fact and conclusions of law and dissolution decree should be vacated.[4] Because Vincent received notice of the May 7 trial date, his argument fails.

Due process requires that parties receive notice that is "reasonably calculated to apprise a party of the pending proceedings affecting him and an opportunity to present his objections before a competent tribunal." *State v. Ralph Williams' N. W. Chrysler Plymouth, Inc.*, 87 Wn.2d 327, 335, 553 P.2d 442 (1976). An attorney does not have the "authority to unilaterally bind . . . a hearing officer . . . merely by filing a 'notice of unavailability.'" *In re Disciplinary Proceeding Against King*, 168 Wn.2d 888, 906, 232 P.3d 1095 (2010). Under KCLCR, parties on the standby calendar receive a minimum of two hours' notice for trial. KCLCR 40(b)(4).

Here, the judge's scheduler e-mailed the parties to inform them that the April 23 trial would have to be moved. They were asked to appear on April 23 to set a new trial date. When they appeared, the court placed the case on the standby calendar.

---

[4] The final child support order was entered in October.

On May 1, Vincent's attorney filed a notice of unavailability and, on May 2, the court's scheduler sent e-mails to both parties setting the trial for May 7. On the same day, Samantha's attorney also e-mailed Vincent's attorney to clarify his intentions regarding the May 7 trial. He specifically told Vincent's attorney that a notice of unavailability is not the same as a continuance and that he would need to file a continuance if he could not appear.

We hold that this e-mail notice was reasonably calculated to give Vincent notice of pending proceedings because the judge's scheduler had contacted Vincent's attorney and corresponded with him in that manner and at the same e-mail address before. Samantha's attorney had also corresponded with him at that address and had given him additional notice of the possibility of a May 7 hearing. Finally, KCLCR requires only that those on the standby calendar have two hours' notice for trial. KCLCR 40(b)(4). Vincent admits that he received the scheduler's e-mail, offers no explanation for his failure to communicate with Samantha's attorney, despite the court's intention to conduct the trial within a month of the April 23 hearing, and fails to argue that e-mail notice was not reasonable under the circumstances. The court scheduler's e-mail, as well as Samantha's attorney's e-mail, gave Vincent five days' notice of the May 7 trial. Thus, we conclude that Vincent had adequate notice.

## B. POSTTRIAL AND THE CR 60(B) MOTIONS

Vincent argues that the trial court abused its discretion when it denied his CR 60(b) motion for relief from the May 7 orders and findings of fact and the June 15 QDROs. We hold that the CR 60(b) motion is inapplicable to the May 7 parenting plan, child support order, and dissolution decree because the trial court vacated those orders on June 27 and that the trial court did not abuse its discretion in denying Vincent's CR 60(b) motion.

We review a trial court's decision on a CR 60(b) motion for an abuse of discretion. *Mitchell v. Wash. State Inst. of Pub. Policy*, 153 Wn. App. 803, 821, 225 P.3d 280 (2009), *review denied*, 169 Wn.2d 1012 (2010). In reviewing a CR 60(b) motion, we review only the decision of the trial court and not the underlying judgment. *Bjurstrom v. Campbell*, 27 Wn. App. 449, 450-51, 618 P.2d 533 (1980). Because a CR 60(b) motion is "addressed to the sound discretion" of the trial court, we do not address arguments that were not made to the trial court. *Jones v. City of Seattle*, 179 Wn.2d 322, 337-38, 314 P.3d 380 (2013). CR 52(c) permits a trial court to enter findings of fact if a party has failed to appear at a trial.[5]

### 1. THE MAY 7 FINDINGS OF FACT AND CONCLUSIONS OF LAW

Vincent filed two CR 60(b) motions to set aside the May 7 findings of fact and conclusions of law: one on May 25 and an amended motion on June 22. The first motion argues only inadequate notice of trial. Because Vincent received adequate notice of the trial date as discussed above, this argument fails.

We turn now to his amended motion. Vincent's amended CR 60(b) motion sought to set aside the May 7 orders as well as the June 15 QDROs and relied on two cases from Division One of this court, *Daley* and *Tacoma Recycling*, for the proposition that under CR 52(c), Vincent was entitled to notice of presentation of the findings of fact and conclusions of law entered after the

---

[5] CR 52(c) states,

Unless an emergency is shown to exist, or a party has failed to appear at a hearing or trial, the court shall not sign findings of fact or conclusions of law until the defeated party or parties have received 5 days' notice of the time and place of the submission, and have been served with copies of the proposed findings and conclusions. Persons who have failed to appear at a hearing or trial after notice, may, in the discretion of the trial court, be deemed to have waived their right to notice of presentation or previous review of the proposed findings and conclusions.

May 7 trial. We disagree with Vincent's interpretation of these cases and CR 52(c), agree with the *Daley* court's interpretation of CR 52(c), and hold that as to the May 7 findings of fact and conclusions of law, the trial court did not abuse its discretion when it denied Vincent's amended CR 60(b) motion.

Vincent's reliance on *Tacoma Recycling* is misplaced because, in that case, Division One interpreted a now superseded version of CR 52(c). In 1980, the rule read, "Unless an emergency is shown to exist, the court shall not sign findings of fact or conclusions of law until the defeated party or parties have received 5 days' notice." CR 52(c) (1967). The version of CR 52(c) that applies to this case and that the *Daley* court interpreted requires five days' notice unless there is an emergency "*or a party has failed to appear at a hearing or trial.*" (Emphasis added.) The rule was changed specifically to permit trial courts to enter findings of fact and conclusions of law after a trial at which one party fails to appear. Thus, Vincent was not entitled to notice of the presentation of the May 7 findings and conclusions because he failed to appear at trial.

Vincent also relies on *Daley*, but misconstrues its holding. In *Daley*, judgment was entered under CR 55 as if the defeated party had never "entered an appearance." 77 Wn. App. at 32. In *Daley*, Division One of this court reversed a default order entered under CR 55 because it held that the rule does not apply where the husband accepted service, filed a pro se response, and attended a status conference, although he did not appear at trial. 77 Wn. App. at 29, 31-32. The court's holding, therefore, was that the trial court erred because it applied an incorrect rule in that case, CR 55. *Daley*, 77 Wn. App. at 31-32. The *Daley* court further held that "if [the wife] had proceeded to trial and presented evidence on the record, then the trial court would have had the

authority under CR 52 to enter findings, conclusions, and judgment without notice." 77 Wn. App. at 32.

Here, that is precisely what happened. Like in *Daley*, although Vincent was not present at the May 7 trial, he did enter an appearance in the case, was represented by an attorney, and participated actively. Further, Samantha presented evidence at trial and accordingly the findings of fact and conclusions of law were properly entered under CR 52(c) because Vincent failed to appear at trial, despite adequate notice.[6] This is the exact procedure that the *Daley* court approved. 77 Wn. App. at 31-32. Vincent is correct that *Daley* guides our decision but is mistaken as to its holding. Because Vincent makes no other argument that the trial court abused its discretion when it denied his amended CR 60(b) motion as to the May 7 findings of fact and conclusions of law, we affirm.

## 2. THE JUNE 15 QDROs

In his amended CR 60(b) motion, Vincent also argued that the QDROs were entered improperly because the trial court did not give proper notice of presentation under CR 52(c). He relied on *Tacoma Recycling* and *Daley* to support this position. As discussed above, CR 52(c) requires notice of presentation of the findings of fact and conclusions of law. He is not entitled under CR 52(c) to notice of presentation of QDROs. Moreover, Division One's decisions in *Daley* and *Tacoma Recycling* do not support Vincent's argument. Therefore, he has not carried out his

---

[6] CR 40(a)(5) states, "Either party, after the notice of trial, whether given by himself or the adverse party, may bring the issue to trial, and in the absence of the adverse party, unless the court for good cause otherwise directs, may proceed with his case."

11

burden to show that the trial court abused its discretion when it denied his motion to set aside the June 15 QDROs.

### 3. THE MAY 7 DISSOLUTION DECREE, CHILD SUPPORT ORDER, AND PARENTING PLAN

On June 27, the trial court granted Vincent's amended CR 60(b) motion in part and vacated the May 7 dissolution decree, child support order, and parenting plan. The court ordered notice of presentation and gave Vincent an opportunity to respond. Vincent took the opportunity and filed objections. Because he prevailed on the amended CR 60(b) motion with respect to the dissolution decree, child support order, and parenting plan, we decline to review those issues.

We conclude that because Vincent received e-mail notification of the trial date five days in advance, at an address through which he had communicated with the court, and because opposing counsel had also sent an e-mail to him as reminder of the trial date, Vincent had adequate notice of trial. We also affirm the trial court's decision on Vincent's two CR 60(b) motions because (1) CR 52(c) permits the trial court to enter findings of fact and conclusions of law if Vincent fails to appear at a trial or hearing, (2) Vincent had notice of presentation before the trial court entered the June 15 QDROs, and (3) Vincent prevailed on the amended CR 60(b) motion with respect to the dissolution decree, child support order, and parenting plan.

### III. THE FINAL PARENTING PLAN AND ORDER OF CHILD SUPPORT

Vincent argues that insufficient evidence supports the trial court's findings of fact entered pursuant to the September 10 and 11 trial on the parenting plan. He also argues that the trial court

12

abused its discretion in adopting the final parenting plan.[7] We affirm the trial court's decision to designate Samantha as the primary residential parent to the extent that determination affects child support. Because their child is now an adult, however, any issue related to the residential provisions of the final parenting plan is moot.

We review a trial court's decision to adopt a parenting plan for an abuse of discretion. *In re Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012), *cert. denied*, 133 S. Ct. 889 (2013). We will uphold a trial court's order of child support absent a manifest abuse of discretion. *In re Marriage of Mattson*, 95 Wn. App. 592, 599, 976 P.2d 157 (1999). A trial court abuses its discretion when its decision is "manifestly unreasonable or based on untenable grounds or untenable reasons." *Katare*, 175 Wn.2d at 35. An appeal is moot when "it presents purely academic issues and where it is not possible for the court to provide effective relief." *Klickitat County Citizens Against Imported Waste v. Klickitat County*, 122 Wn.2d 619, 631, 860 P.2d 390, 866 P.2d 1256 (1993). We review a trial court's decision for substantial evidence to support the findings of fact and determine whether the findings of fact support the conclusions of law. *Casterline v. Roberts*, 168 Wn. App. 376, 381, 284 P.3d 743 (2012). Evidence is sufficient when it is enough to "persuade a rational fair-minded person that a finding is true." *Casterline*, 168 Wn. App. at 381 (citing *Hegwine v. Longview Fibre Co.*, 132 Wn. App. 546, 555-56, 132 P.3d 789 (2006), *aff'd*, 162 Wn.2d 340, 172 P.3d 688 (2007)). We consider unchallenged findings of fact

---

[7] Vincent also appeals the trial court's order denying his motion to stay the child support order pending appeal. He did not include that motion or the related order in the record on appeal and, thus, there is no final order or record relating to the final order for this court to review. RAP 9.2(b).

to be verities on appeal. *Casterline*, 168 Wn. App. at 381 (citing *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 808, 828 P.2d 549 (1992)).

Samantha and Vincent's child turned 18 in July 2014. Therefore, any issue regarding residential provisions in the parenting plan are purely academic. *Klickitat County Citizens Against Imported Waste*, 122 Wn.2d at 631. We, therefore, cannot offer Vincent any relief from the residential provisions of the final parenting plan. That issue is moot.

However, review is proper to the extent that Vincent seeks review of the parenting plan's implications on his child support obligations. Vincent argues that it was an abuse of discretion to designate Samantha the primary residential parent because, despite the temporary parenting plan's provision that awarded each parent alternating weeks of custody, their child was actually living with him and he was bearing all of the financial responsibility while paying child support to Samantha.

In order to grant Vincent the relief from the child support orders that he seeks, we must determine that the trial court either (1) abused its discretion when it designated Samantha the primary residential parent, or (2) abused its discretion when it found that Vincent was not in dire financial straits and, thus, the ordered child support amount was improper. A trial limited to the issues of the parenting plan and child support occurred on September 10 and 11.

The first issue is whether the trial court abused its discretion when it awarded primary residential custody to Samantha, thereby guaranteeing Vincent's larger support responsibility. The trial court considered the relevant statutory language in RCW 26.09.184 and .187 and found that the most relevant factors to this case were (1) the emotional stability of the child, (2) providing for the child's changing needs, and (3) minimizing exposure to parental conflict. It is undisputed that

the child would prefer to live with her father. The court found that the child's preference should be considered and that she would prefer to live with her father but that she enjoyed spending time with her mother and also wanted to improve their relationship. The court determined that it was in the child's best interest to live with her mother because her father exposed her to and involved her excessively in the dissolution litigation and was focused too much on money and not enough on how the conflict might affect their child. In court, Samantha stated that she was willing to let Vincent have full custody in order to end the conflict. The court found that Samantha's selflessness, coupled with Vincent's rage, indicated that Samantha's home would likely create a more emotionally stable situation for the child.

The court's October 12 findings of fact on this issue are supported by the September trial testimony. Finding of fact D, for example, states that the temporary parenting plan's alternating weeks of custody was not working for their child. This finding was supported by Samantha's and Vincent's testimony. Finding of fact N stated that "Mr. Badkin's behavior at trial, in some instances, demonstrated venom and hatred and exposure of the child to that on a constant basis is unhealthy." Clerk's Papers (CP) at 565. This finding of fact is supported by the trial court's observations of Vincent's venomous and unsettling demeanor at trial. The court also reasonably concluded that this demeanor would lead to isolation of the child from Samantha. Finding of fact P states that "[t]here has not been a stable residential placement for the child in the fahter's [sic] home in the last 8 months." CP at 566. This is supported by Vincent's testimony that he has moved, at times with their child, from a space in his attorney's home to a more permanent residence, but that there were ongoing renovations of an indeterminate length that required Vincent to vacate the permanent residence and live in a unit above the garage. Finding of fact O states that

based on Samantha's testimony and pictures of her living space, the child's space in Samantha's home was adequate. These findings of fact alone are sufficient to support a conclusion that it was not an abuse of discretion to designate Samantha as the residential parent.

Vincent does not argue that the trial court's reasons for designating Samantha as the residential parent are unreasonable, untenable, or an abuse of its discretion. Accordingly, we hold that sufficient evidence supports the trial court's findings and the findings support the conclusion that Samantha should be designated the primary residential parent. Thus, the trial court did not abuse its discretion in reaching this conclusion.

The second issue is whether the trial court abused its discretion when it found that Vincent was not in dire financial straits such that the ordered child support amount was improper. On September 14, 2012, the trial court made comprehensive oral rulings rejecting Vincent's request for a modification of back child support and finding that he was not in dire financial straits and did not qualify for any sort of modification.

The court discussed the following facts leading to its conclusion that Vincent was not in dire financial straits:

> He makes approximately $5300 a month in salary, $31.50 an hour plus whatever increase he recently received. He's paid no rent since January of 2012. He has paid for utilities in his current location, roughly $400. He has voluntarily increased his car payment expense . . . . The third reason that request [to find that Vincent is in dire financial straits] is denied is that [Vincent] had a simple remedy available to him that he chose not to pursue, that was to simply follow the temporary parenting plan that had been Court ordered of week on/week off.

Report of Proceedings (Sep. 14, 2012) at 3-4. This finding was based on Vincent's testimony and on his financial declarations. The most persuasive factor was the final one: if Vincent had made sure that their child was with Samantha during her weeks and with him during his weeks, his

16

financial outlays for the child's benefit would have more accurately reflected what the temporary parenting plan envisioned. The record, therefore, supports the trial court's determination that Vincent was not in dire financial straits and he does not offer facts sufficient to demonstrate an abuse of discretion. Therefore, we hold that the trial court did not abuse its discretion when it found that he was not in dire financial straits.

### IV. SANCTIONS AGAINST VINCENT AND HIS ATTORNEY

Vincent contends that a court commissioner improperly ordered him to pay $75 in attorney fees to Samantha and improperly ordered his attorney to pay $100 for failing to timely file Vincent's financial disclosures. We decline to review the commissioner's sanction orders while a revision motion is still pending.

In general, appeal to the Court of Appeals must be of a final decision of the superior court. RAP 2.1, 2.2(a). "[I]n all matters decided by a commissioner the parties are entitled to revision by a judge of the superior court." *State v. Wicker*, 105 Wn. App. 428, 431, 20 P.3d 1007 (2001) (citing RCW 2.24.050). Unless a motion for revision is made within 10 days, the commissioner's orders become orders of the superior court and are subject to appellate review like the orders of a superior court judge. RCW 2.24.050.

On May 6, 2011, the commissioner ordered sanctions against Vincent's attorney in the amount of $100. On the same day, the commissioner also ordered Vincent to pay $75 in attorney fees to Samantha as part of a written order enjoining the parties from disposing of their property during the dissolution. On May 12, Vincent filed a motion for revision of both orders. The

superior court did not issue a written order on Vincent's motion.[8] Because Vincent filed a timely motion for revision and the superior court did not rule on that motion, the commissioner's orders for sanctions did not become orders of the superior court. RCW 2.24.050. Pursuant to RAP 2.1 and 2.2(a), we decline to review those orders.

Vincent next argues that because the trial court had not yet ruled on his motion for revision of the commissioner's sanction orders, the additional sanctions that it imposed for failure to pay were also improper. We agree.

On August 26, 2011, the trial court imposed additional sanctions on both Vincent and his attorney in the amount of $100 each for failure to pay the sanctions that the commissioner ordered. Because Vincent filed a timely motion for revision and no formal order was entered, that motion is still pending. Accordingly, the later sanctions for failure to comply with the initial sanction orders were not proper. We, therefore, vacate the court's August 26 sanction orders and remand for a ruling on the motion for revision of the commissioner's order.

## V. ISSUES RAISED FOR THE FIRST TIME ON APPEAL

Vincent raises three arguments for the first time on appeal. Because Vincent raises each of these issues for the first time on appeal, we decline to review them.

We generally decline to review an argument that is raised for the first time on appeal. RAP 2.5(a); *Mellish v. Frog Mountain Pet Care*, 172 Wn.2d 208, 221-22, 257 P.3d 641 (2011). We may review an argument for the first time on appeal if the issue concerns a "manifest error affecting

---

[8] According to Vincent, a hearing on the motion was held and Judge Spearman planned to deny the motion in a written order. He apparently did not have the opportunity to sign the order before he passed away and the transcript of that hearing is not in the record on appeal.

a constitutional right." RAP 2.5(a)(3); *Mellish*, 172 Wn.2d at 221. The appellant has the burden "to provide an adequate record to review [his] issues" and if he does not, the trial court's decision stands. *Fahndrich v. Williams*, 147 Wn. App. 302, 307, 194 P.3d 1005 (2008); RAP 9.2(b).

## A. CONFLICTS WITH SAMANTHA'S ATTORNEY

Vincent argues that the trial court erred when it permitted Samantha's attorney to represent her despite a conflict of interest. However, Vincent made no formal motion to the trial court to disqualify Samantha's counsel and makes no argument here that the potential conflict affects a specific constitutional right. There are no facts, apart from vague references, in the record or in Vincent's briefing that provide this court with a basis to decide whether a conflict even existed and no assertion that any prejudice resulted. *Fahndrich*, 147 Wn. App. at 307. Because Vincent raises the attorney conflict issue for the first time on appeal, we decline to address it.

## B. THE AUGUST 3 FINDINGS OF FACT AND CONCLUSIONS OF LAW

Vincent argues that the August 3 findings of fact and conclusions of law were entered contrary to CR 52(b) because they were entered more than 10 days after the May 7 findings of fact and conclusions of law.[9] We decline to review an issue raised for the first time on appeal.

CR 52(b) states that a party may, within 10 days after entry of a judgment, move the court to amend its findings of fact or make additional findings of fact "and may amend the judgment accordingly." CR 52(b). However Vincent did not object to the August 3 findings of fact and conclusions of law below. On August 31, he filed a CR 60(b) motion objecting only to the language in the dissolution decree's back child support order and without a request for amended

---

[9] It was these findings of fact and conclusions of law that resulted in an order to pay half of the community IRS debt; Vincent owed $778.50.

19

or additional findings of fact, as CR 52(b) requires. This motion, in fact, made no reference to CR 52 itself. Moreover, Vincent makes no argument that the August 3 findings of fact and conclusions of law concern a manifest error affecting a constitutional right. We decline to review Vincent's CR 52(b) argument for the first time on appeal.

## C. JUDGE SHUFFLING

Vincent argues that Judge Laurie acted improperly when she presided over the May 7 trial because the case was preassigned to Judge Dalton and then improperly reassigned to Judge Haberly. We decline to review this issue because Vincent raises it for the first time on appeal and fails to provide an adequate record for our review.

In order to preserve this issue for appeal, Vincent must at least bring "the facts before the trial judge and . . . seek [her] recusal." *Henriksen v. Lyons*, 33 Wn. App. 123, 128, 652 P.2d 18 (1982), *review denied*, 99 Wn.2d 1001 (1983). Although Vincent made several general complaints below about the judges who had heard his case, he did not make a motion asking Judge Laurie, who presided over the trial and entered the orders to which he objects, to recuse herself and did not argue bias or harm from her decisions. In his June 22 amended CR 60(b) motion, he also failed to present relevant facts about any alleged bias and presents no legal or factual argument here that Judge Laurie's decision to preside over the case was improper, prejudicial, or that it affected a specific constitutional right nor does he provide any record, apart from Vincent's attorney's vague affidavit, filed on August 2, that would permit this court to determine whether bias or conflict existed. RAP 2.5(a)(3); *Fahndrich*, 147 Wn. App. at 307; RAP 9.2(b). We decline to review the propriety of Judge Laurie's decision to preside over this case for the first time on appeal.

20

## VI. MOTION TO AMEND DISSOLUTION PETITION

Vincent argues that the trial court abused its discretion when it permitted Samantha to file an amended petition for dissolution without reason. Because Vincent fails to show a manifest abuse of discretion, we affirm.

We review the trial court's decision to permit amendment of pleadings under CR 15 for a manifest abuse of discretion. *Herron v. Tribune Publ'g Co.*, 108 Wn.2d 162, 165, 736 P.2d 249 (1987). A trial court commits a manifest abuse of its discretion when its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005). CR 15(a) provides, in pertinent part, that a party may amend its pleadings "by leave of court" and that leave to amend should be given "freely . . . when justice so requires." The purpose of CR 15 is to "'facilitate a proper decision on the merits'" and to give notice to either party of the potential claims and defenses. *Herron*, 108 Wn.2d at 165 (quoting *Caruso v. Local Union 690 of Int'l Bhd. of Teamsters*, 100 Wn.2d 343, 349, 670 P.2d 240 (1983)).

Two months before trial, the court granted Samantha's request to amend the dissolution petition under CR 15. Vincent filed an amended answer prior to trial. Vincent does not cite to any authority or support for his position that the trial court's decision was untenable or manifestly unreasonable. The trial court properly granted leave to amend the petition in order to conform the pleadings to the parties' current positions and, in the interest of fairness, Vincent was permitted to respond. Therefore, we hold that the trial court did not manifestly abuse its discretion when it permitted Samantha to amend the dissolution petition.

21

No. 43900-0-II

## VII. ATTORNEY FEES

Vincent argues that he should receive "costs on appeal" as attorney fees. Br. of Appellant at 55. We disagree. A party requesting attorney fees must "devote a section of its opening brief to the request for the fees or expenses." RAP 18.1(b). The requesting party must also have the right to attorney fees based on "applicable law." RAP 18.1(a).

Vincent devotes only one sentence of a summary paragraph to his request for attorney fees, and does not argue that he has a right to attorney fees under applicable law. His request for attorney fees on appeal is therefore denied.

We affirm the trial court's final dissolution rulings, remand for a ruling on Vincent's revision motion, and vacate its order for additional sanctions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, C.J.

JOHANSON, C.J.

We concur:

BJORGEN, J.

MELNICK, J.

22