# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ERNST MEINHART and CHRISTINE MEINHART, husband and wife, and the marital community composed thereof, | No. 49667-4-II |
| Appellants, | |
| v. | PUBLISHED OPINION |
| MONICA ANAYA and JOHN DOE ANAYA, wife and husband, and the marital community composed thereof, | |
| Respondents. | |

MAXA, A.C.J. – Ernst and Christine Meinhart appeal the trial court's denial of their

motion for a new trial. The Meinharts were involved in an automobile accident caused by

Monica Anaya, and they filed a lawsuit against her for personal injury damages. At trial, Anaya

did not dispute that Ernst and Christine[1] were injured and agreed that the jury should award some

damages for their pain and suffering. And Anaya's medical expert conceded that both Ernst and

Christine were injured in the accident and received reasonable medical treatment for

---

[1] To avoid confusion, we refer to Ernst and Christine by their first names. We intend no disrespect.

approximately five months. However, although the jury awarded Ernst and Christine almost all of their claimed medical expenses, it awarded them no noneconomic damages.

The Meinharts argue that the trial court abused its discretion in denying their motion for a new trial because the jury's omission of noneconomic damages was not supported by the evidence. We agree. Accordingly, we reverse the trial court's denial of the Meinharts' motion for a new trial and remand for a new trial.

FACTS

*Vehicle Accident and Injuries*

In October 2013, the Meinharts were stopped at an intersection when Anaya's car collided with the rear of their pickup truck. Ernst described the collision as a major jolt, and Christine stated that the collision was like a bulldozer hitting the truck.[2] The collision bent the Meinharts' rear bumper and damaged Anaya's front grill and bumper. Ernst and Christine did not seek immediate medical attention.

The next day, Ernst had pain in his neck and back and Christine had a headache and pain in her neck, upper back, and lower back. A week later, they started treatment with a chiropractor, Dr. Don Finlayson. They both received regular treatment from Dr. Finlayson until June 2014, when he discharged them.

In 2015, the Meinharts filed suit against Anaya, seeking economic and noneconomic damages. Anaya admitted liability but contested the amount of damages.

---

[2] Anaya did not describe the force of impact.

*Ernst's Injuries and Treatment*

At trial, Ernst stated that before the accident, he had experienced no problems with his neck or back. On the day of the accident he did not feel any significant pain, but the next day he had moderate to high pain in his neck and lower back. On his first visit to Dr. Finlayson, Ernst rated his neck, mid-back, and low back pain level as a seven on a scale of zero to 10, with 10 being the most pain he could imagine. Over the next several months his symptoms decreased in intensity. By February 24, 2014, Ernst rated his neck and mid-back pain level at two and his low back pain level at three. However, he also noted that on other days the pain levels may have been higher.

Ernst received treatment from Dr. Finlayson until June 6, 2014. At that time, Ernst rated his neck and low back pain level at between zero and two. He testified that he had made a good recovery but was not 100 percent and still had some pain. He had not returned to his pre-accident condition, and once in a while he had pain that required medication. At the time of trial, Ernst still felt pain in his neck a few times per month.[3]

Dr. Finlayson stated that at an initial evaluation, Ernst had moderate to severe pain in his neck, middle back, low back and pelvis, and he had headaches. Ernst made progress through the course of treatment until discharge on June 6, 2014. At that time, Ernst was still having pain and had objective findings of injury.

---

[3] Ernst also testified that he had a flare-up of symptoms in February 2015, which resulted in severe pain in his lower back, the same area as after the accident. He returned to Dr. Finlayson after the flare-up for a couple months of additional treatment. However, Anaya challenged the relationship between the accident and this pain and the jury did not award any medical expenses for this treatment.

*Christine's Injuries and Treatment*

At trial, Christine testified that her symptoms began the day after the accident. She developed a pounding headache and moderate to severe pain in her neck that radiated to her upper back and parts of her lower back. She began treatment with Dr. Finlayson a week after the accident, at the same time as Ernst. Medical records showed that on her first visit to Dr. Finlayson, Christine rated her headache pain level as a five, her neck pain level as a seven, and her mid-back and low back pain level as a six on a scale of zero to 10. Her symptoms gradually dissipated through the course of her treatment. Christine received treatment from Dr. Finlayson until June 6, 2014, and at that time she had no symptoms relating to the October 2013 collision.

Christine also testified about her pre-accident treatment with Dr. Finlayson. In 2006 she sustained injuries in a car accident, and she received treatment through 2007 for injuries to her neck and back. Christine stated that after she was released from treatment, she did not have any spinal problems. However, medical records from May 2013 showed that she also was complaining of neck pain that resolved with Advil and that she had arthritis in her neck.

Dr. Finlayson testified that after the October 2013 accident Christine had moderate to severe muscle pain and inflammation in her neck, mid-back, low back and pelvis, and she had headaches. Christine rated her neck pain level as a seven and her mid-back and low back pain as a six on a zero-to-10 scale. Dr. Finlayson's diagnosis was that she had sprained and strained her neck, mid-back, and low back and that she had misaligned vertebra in those regions. He provided regular treatment to Christine until she was discharged on June 6, 2014. At that time, she had reached maximum medical improvement.

Dr. Finlayson testified that Christine's 2006 accident would predispose her to injury from the 2013 accident. But he also stated that it would be illogical to conclude that her symptoms in 2013 resulted from the 2006 accident alone.

*Dr. Finlayson's Records*

The trial court admitted into evidence Dr. Finlayson's extensive medical records. Ernst and Christine had over 40 visits each to Dr. Finlayson in the seven months after the accident, some of which included exercise therapy sessions. Dr. Finlayson's records documented that Ernst and Christine reported that they experienced pain in their necks and backs during the entire period of treatment that gradually decreased over time.

The trial court also admitted into evidence billings from Dr. Finlayson and from his massage therapist. Through June 6, 2014, Ernst's medical expenses totaled $4,695 for Dr. Finlayson and $280 for the massage therapist. Christine's medical expenses totaled $4,715 for Dr. Finlayson and $350 for the massage therapist.

*Testimony of Defense Expert*

Anaya's sole damages expert was a chiropractor, Dr. Mark Sutton, who examined Ernst and Christine in December 2015 and reviewed their medical records. Dr. Sutton concluded based on reasonable probability that Ernst suffered several injuries in the 2013 accident: a mild to moderate strain of his neck, mid-back, and low back. Dr. Sutton believed that reasonable treatment for these injuries was 24 chiropractic treatments, six exercise therapy sessions, and two massage therapy treatments. His opinion was that Ernst's treatment should have ended by March 2014.

From his examination of Christine, Dr. Sutton thought that some of her neck pain was related to a degenerative problem that existed before the October 2013 accident. However, he concluded on a more probable than not basis that Christine sustained injuries in the 2013 accident: a mild to moderate exacerbation of her existing condition in her neck and a mild to moderate strain of her lower back. Dr. Sutton believed that reasonable treatment for these injuries was 26 chiropractic treatments, eight exercise therapy sessions, and three massage therapy treatments. And as with Ernst, his opinion was that Christine's treatment should have ended by March 2014.

Dr. Sutton confirmed on cross-examination that he agreed that Ernst and Christine were injured in the October 2013 accident.

*Closing Argument*

In closing argument, Anaya stated, "Dr. Sutton has testified that both Mr. and Mrs. Meinhart sustained soft tissue injuries to their necks and their backs. And there's no contest, we're not contesting the fact that they had injuries." 3 Report of Proceedings (RP) at 15. She told the jury, "[Y]ou've got seven months that you have to figure out how to compensate them for their damages for the pain and suffering for that period of time." 3 RP at 16. Anaya suggested that the jury award approximately $1,800 to $2,000 each to Ernst and Christine for those noneconomic damages. Anaya also stated that the amount of reasonable medical expenses was $2,300 for Ernst and $2,190 for Christine.

*Jury Verdict*

The jury returned a special verdict that awarded past economic damages to Ernst in the amount of $4,975 and to Christine in the amount of $5,065. The jury did not award any amount

6

to either Ernst or Christine for past and future noneconomic damages, entering "$0.00" on the lines for noneconomic damages. Clerk's Papers at 35.

The Meinharts filed a motion for a new trial, arguing that the jury improperly omitted an award for their pain and suffering. The trial court denied the motion and entered judgment on the jury's verdict.

The Meinharts appeal the trial court's order denying their motion for a new trial.

ANALYSIS

The Meinharts argue that the trial court erred in denying their motion for a new trial under CR 59(a)(7) because the jury's omission of an award for noneconomic damages was contrary to the evidence. We agree.

A.      CHALLENGING A DAMAGES AWARD UNDER CR 59(a)(7)

"Determination of the amount of damages is within the province of the jury, and courts are reluctant to interfere with a jury's damage award when fairly made." *Palmer v. Jensen*, 132 Wn.2d 193, 197, 937 P.2d 597 (1997). However, CR 59(a)(7) provides that a verdict may be vacated and a new trial granted when "there is no evidence or reasonable inference from the evidence to justify the verdict." Therefore, a trial court may grant a motion for a new trial under CR 59(a)(7) when there is no evidence or reasonable inference from the evidence supporting the damages award in a jury's verdict. *Fahndrich v. Williams*, 147 Wn. App. 302, 305, 194 P.3d 1005 (2008).

We review a trial court's ruling on a CR 59(a)(7) motion for an abuse of discretion. *Id.* at 305-06. We must review the record to determine whether sufficient evidence supports the jury's verdict, viewed in the light most favorable to the nonmoving party. *Id.* at 306.

7

A trial court abuses its discretion if it *grants* a motion for a new trial when sufficient evidence supports the verdict. *Palmer*, 132 Wn.2d at 198. But a trial court also abuses its discretion if it *denies* a motion for a new trial when the verdict is contrary to the evidence. *Id.*

B.     FAILURE TO AWARD NONECONOMIC DAMAGES FOR PERSONAL INJURIES

Several cases have addressed the situation where a jury awards economic damages for personal injuries but fails to award any noneconomic damages.

In *Palmer*, the Supreme Court noted that there was "no per se rule that general damages must be awarded to every plaintiff who sustains an injury." 132 Wn.2d at 201. However, the court emphasized that "a plaintiff who substantiates her pain and suffering with evidence is entitled to general damages." *Id.*; *see also Fahndrich*, 147 Wn. App. at 306. Therefore, whether a personal injury plaintiff is entitled to a new trial based on the jury's failure to award noneconomic damages depends on the specific evidence presented at trial. *See Palmer*, 132 Wn.2d at 201.

1.     Cases Ordering New Trial

In *Palmer*, one of the plaintiffs presented evidence from her medical providers that she was experiencing pain from accident-related injuries to her lower back during the two years that they treated her. 132 Wn.2d at 196. In a general verdict, the jury awarded the exact amount of the plaintiff's medical expenses but failed to include any amount for pain and suffering. *Id.* at 195, 201. The trial court denied the plaintiff's motion for a new trial. *Id.* at 196.

The Supreme Court held that the trial court abused its discretion in denying the motion. *Id.* at 203. In discussing the trial, the court stated that "[t]he defendant presented no evidence to refute [the] medical opinions" that the accident caused the plaintiff to experience pain. *Id.* at

196. The court recounted the evidence from the plaintiff's medical providers that she was injured in the accident and that she experienced ongoing pain. *Id.* at 202-03. The court concluded:

> The medical evidence substantiates [the plaintiff's] claim that she experienced pain and suffering for over two years after the accident. We hold the jury's verdict providing no damages for [plaintiff's] pain and suffering was contrary to the evidence.

*Id.* at 203.

In *Fahndrich*, the plaintiff was injured in two separate car accidents and presented testimony from herself, friends and family, and multiple medical providers about her pain. 147 Wn. App. at 304. The court noted that the defendants did not present any medical testimony and did not present any evidence to dispute the plaintiff's claim that she suffered pain. *Id.* at 304-05. The only medical dispute was the diagnosis for the plaintiff's injury. *Id.* at 304. The jury awarded economic damages but no noneconomic damages. *Id.* at 305. The trial court denied the plaintiff's motion for a new trial. *Id.*

This court held that the trial court abused its discretion in denying the motion for a new trial. *Id.* at 309. The court stated:

> [The plaintiff] presented extensive evidence of her pain and suffering, and [the defendants] presented no evidence to contradict it. . . . *[T]he defendants did not seriously challenge that [the plaintiff] had the symptoms or that the . . . accidents caused them.*

*Id.* at 308 (emphasis added). Therefore, the court concluded that the evidence did not support the jury's finding that the plaintiff suffered no pain or disability from the accidents. *Id.* at 309.

*Palmer* and *Fahndrich* establish that it is an abuse of discretion for a trial court in a personal injury case to deny a motion for a new trial when a jury awards economic damages but

fails to award noneconomic damages if (1) the plaintiff presents substantial evidence that an accident caused injury and pain, and (2) the defendant presents no contrary evidence or inference.

2. Cases Denying New Trial

On the other hand, case law shows that an award of noneconomic damages may not warrant a new trial when the defendant presents a legitimate challenge to the plaintiff's injuries or the injuries' proximate cause.

In *Palmer*, a second plaintiff – a young child – was in the car at the time of the accident. 132 Wn.2d at 195. The child's pediatrician noted that the child experienced pain in the back of his head only on the day of the accident, but did not prescribe further treatment. *Id.* at 202. The child's total medical expenses were $34. *Id.* The court concluded, "Given that [the child's] injuries were minimal, and that he required virtually no medical care, the jury could reasonably have concluded he was not entitled to damages for pain and suffering." *Id.*

In *Lopez v. Salgado-Guadarama*, the defendant struck the plaintiff's car while traveling less than six miles per hour, causing no physical damage. 130 Wn. App. 87, 89, 122 P.3d 733 (2005). The plaintiff was taken by ambulance to the hospital because of shoulder pain and thereafter received ongoing medical treatment. *Id.* At trial, the defendant presented a medical expert who testified that the plaintiff suffered only a minor injury that did not justify extended treatment. *Id.* at 89-90. The jury awarded the full amount of the plaintiff's economic damages, but awarded no damages for pain and suffering. *Id.* at 90. The district court denied the plaintiff's motion for a new trial but the superior court reversed on appeal. *Id.*

Division Three of this court held that the superior court erred in ruling that the plaintiff was entitled to a new trial. *Id.* at 93-94. The court stated that *Palmer* "clearly gives juries a measure of discretion to decline to award damages for pain and suffering *in cases where the pain is minimal or transitory*." *Id.* at 93 (emphasis added). The court focused on the defendant's evidence that the plaintiff's pain was minimal:

> Here, the jury's failure to award damages for pain and suffering was consistent with the evidence. In contrast to the facts presented in *Palmer*, the defense disputed every aspect of Mr. Lopez's damages. Defense experts testified [that] no objective medical findings supported Mr. Lopez's extensive complaints of pain. [A doctor] opined Mr. Lopez should have recovered from any injuries quickly after the accident.

*Id.* at 92. The court concluded that this evidence "allowed the jury to conclude that any pain Mr. Lopez felt as a direct result of the accident was short-lived" and therefore that sufficient evidence supported the jury's failure to award noneconomic damages. *Id.* at 93.

In *Gestson v. Scott*, the plaintiff was behind the defendant at a bank drive-through window when the defendant backed up, contacting the plaintiff's front bumper but causing minimal damage. 116 Wn. App. 616, 618, 67 P.3d 496 (2003). The plaintiff went to the emergency room and later underwent extensive treatment including surgery for an alleged neck injury. *Id.* at 619. The jury awarded only the expense of the emergency visit for economic damages and no noneconomic damages. *Id.* The trial court granted the plaintiff's motion for a new trial. *Id.*

This court held that the trial court erred in granting a new trial. *Id.* at 625. The court noted the evidence that (1) the force of impact was minor, (2) the plaintiff did not complain of neck pain at the emergency room or the next day when she started chiropractic treatment, and (3) the plaintiff had experienced neck problems before the accident and the evidence showed that

after the accident she had no neck symptoms beyond her preexisting condition. *Id.* at 623-24. The court stated that even though the plaintiff's experts related her neck pain to the accident, other evidence allowed the jury to properly disregard that expert testimony. *Id.* at 624. The court concluded that there was sufficient evidence to support the jury's finding that the accident did not cause the plaintiff's neck injury. *Id.* at 625.

These cases establish that the plaintiff is not entitled to a new trial when the jury awards no noneconomic damages if the defendant presents evidence supporting an argument that that the plaintiff's injuries and pain were minimal or were unrelated to the accident.

C.    NEW TRIAL ANALYSIS

Here, evidence of Ernst's and Christine's pain and suffering was similar to the plaintiffs' evidence in *Palmer* and *Fahndrich*. Both Ernst and Christine testified that they experienced significant pain beginning the day after the accident and continuing for several months. Dr. Finlayson's testimony and medical records confirmed that they were injured in the October 2013 accident and experienced ongoing pain.

More significantly, as in *Palmer* and *Fahndrich*, Anaya presented no evidence, inference, or even argument that the accident did not cause any meaningful injuries. Unlike in *Lopez* or *Gestson*, where the defendants contested the existence of a significant injury or pain, Anaya contested only the degree of Ernst's and Christine's injuries and pain and the amount of the noneconomic damages to which they were entitled.

Anaya presented no evidence that contradicted or questioned the Meinharts' injuries or pain. In fact, the only evidence Anaya presented *supported* a finding that Ernst and Christine experienced pain and suffering. Dr. Sutton stated his opinion that both Ernst and Christine

12

suffered injuries in the accident. He never questioned that they experienced pain for several months. And there was no evidence or inference that Ernst's and Christine's injuries did not warrant ongoing treatment. Dr. Sutton testified that although both Ernst and Christine should have discontinued treatment two months earlier, it was reasonable for them to receive treatment regularly for five months after the accident.

As in *Gestson*, there was some evidence that Christine had preexisting neck problems. But Dr. Sutton opined that the October 2013 accident had exacerbated that condition and also that Christine had suffered a new injury to her back.

Further, Ernst's and Christine's credibility was not seriously at issue. Their testimony concerning their symptoms and progression was consistent with both Dr. Finlayson's testimony and their medical records. Anaya presented no evidence or argument that they were exaggerating their injuries or pain.

Finally, Anaya acknowledged in closing argument that Ernst and Christine were entitled to some damages for their pain and suffering. Anaya only disputed the *amount* of noneconomic damages that Ernst and Christine were requesting.

There was no evidence from which the jury could have concluded that Ernst and Christine suffered no pain and suffering as a result of the October 2013 accident. Therefore, under CR 59(a)(7) there was "no evidence or reasonable inference from the evidence" to justify the jury's failure to award noneconomic damages to either Ernst or Christine. We hold that the trial court abused its discretion in denying the Meinharts' motion for a new trial.

13

CONCLUSION

We reverse the trial court's denial of the Meinharts' motion for a new trial and remand for a new trial.

MAXA, J.

We concur:

WORSWICK, J.

BJORGEN, C.J.